FILED

CLERK, U.S. DISTRICT COURT

**11/19/25**

CENTRAL DISTRICT OF CALIFORNIA

BY____MRV____DEPUTY

DOCUMENT SUBMITTED THROUGH THE
ELECTRONIC DOCUMENT SUBMISSION SYSTEM

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

**BILLY STEFFEY,**
Plaintiff,

v.

**COLETTE S. PETERS,** in her o icial capacity as Director of the Federal Bureau of Prisons;
**M. WADE JENNINGS,** in his individual and o icial capacity;
**KEVIN SCHWINN,** in his individual and o icial capacity; **SAFARILAND, LLC;**
**R. JOHN LYNN,** Regional Special Investigative Agent (DOE 1);
**SIS TECHNICIAN S. AGUILAR,** (DOE 2);
**SIS LIEUTENANT [FIRST NAME UNKNOWN] JOHNSON,** (DOE 3);
**DISCIPLINE HEARING OFFICER WILLIAM J. CHETWOOD,** (DOE 4);
**DOES 5-50,**
Defendants.

Case No. _____2:25-cv-11105-VBF-SK_____

---

# PLAINTIFF'S EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

---

## I. INTRODUCTION - PHASE 1 AND PHASE 2 VIOLATIONS

Plaintiff Billy Steffey respectfully requests that this Court immediately issue a Temporary Restraining Order ("TRO") and Preliminary Injunction to:

1. **Preserve all evidence related to this litigation**, including documents, emails, memoranda, NIK test results, training materials, communications

between Special Investigative Services (SIS) staff and Discipline Hearing Officers (DHOs), and Plaintiff's YouTube video evidence;

2. **Prohibit destruction of evidence proving systematic fraud**, including Wade Jennings' January 18, 2017 SIS Advisory directing staff to misrepresent burgundy NIK Test U results as positive (**Exhibit A**), R. John Lynn's "one team" emails directing ex parte communications between SIS and DHOs (**Exhibit A**), **communications between Aguilar and DHO Chetwood at FCI Lompoc**, **communications between Lt. Johnson and Plaintiff at FCI Sheridan**, and **Plaintiff's video demonstration proving burgundy is the baseline color** (**Exhibit B**);

3. **Immediately cease BOP's systematic practice of ex parte communications** between SIS investigators and DHO adjudicators, which violates inmates' constitutional right to fair and impartial tribunals under *Wolf v. McDonnell*, 418 U.S. 539 (1975);

4. **Immediately cease retaliation against Plaintiff** for filing his federal habeas petition and for exercising his First Amendment right to access the courts;

5. **Prohibit BOP from imposing additional disciplinary sanctions or retaliatory transfers** based on Plaintiff's federal litigation; and

6. **Require BOP to provide notice to current inmates** facing disciplinary charges based on NIK tests or hearings tainted by ex parte communications of their right to challenge the proceedings and file federal litigation without retaliation.

This case exposes three interconnected violations spanning two geographic locations and two temporal phases:

**PHASE 1 - NIK Test Fraud and "One Team" Policy (FCI Lompoc, December 2017 - February 2018):**

BOP Central Office (Wade Jennings and Kevin Schwinn) issued an official directive to all BOP facilities nationwide instructing staff to interpret "burgundy" color results on NIK Test U as positive for drugs. **See Exhibit A.** This directive directly contradicts the manufacturer's instructions, which state only BLUE indicates positive. **Plaintiff created video evidence demonstrating that when a NIK Test U pouch is activated without any drugs or substances added, the chemicals automatically mix and turn burgundy. See Exhibit B. The video also shows the blue reference square printed on the pouch itself, confirming that only blue indicates a positive result. See Exhibit B.**

At FCI Lompoc, **SIS Technician Aguilar conducted the fraudulent tests, filed the false report, and then threatened Plaintiff before the DHO hearing, offering a "deal" for minimal sanctions if he didn't contest the**

**charges.** These threats prove pre-hearing coordination with DHO Chetwood pursuant to R. John Lynn's "one team" policy. **See Exhibit A.**

**PHASE 2 - Retaliation for Federal Litigation (FCI Sheridan, After Habeas Filing):**

**CRITICALLY DISTINCT AND SEPARATE:** After Plaintiff was transferred to FCI Sheridan and filed his federal § 2241 habeas petition, **Defendant SIS Lieutenant Johnson (who was NOT involved in the initial Lompoc incidents) threatened Plaintiff with indefinite SHU confinement if he did not abandon his federal litigation.** This is **direct retaliation for exercising the First Amendment right to access federal courts**, constituting a separate and independent constitutional violation.

---

## II. FACTUAL BACKGROUND

**PHASE 1: Fraudulent Testing and Rigged Tribunal at FCI Lompoc (December 2017 - February 2018)**

**A. The Wade Jennings Directive (January 18, 2017)**   On January 18, 2017, M. Wade Jennings issued an official SIS Advisory to all BOP facilities nationwide directing staff to interpret burgundy NIK Test U results as positive. **See Exhibit A.** This contradicts manufacturer instructions stating only BLUE is positive. **See Exhibits A and B.**

**B. The R. John Lynn "One Team" Policy (January 23, 2018)**   On January 23, 2018, R. John Lynn distributed Wade Jennings' directive to Western Region facilities with an explicit instruction to SIS staff to "communicate with your DHO" and a reminder that "we are all on one team" working to "hold inmates accountable." **See Exhibit A.**

**This "one team" language proves BOP does not provide fair tribunals.** The investigator (SIS) and adjudicator (DHO) are coordinated to ensure convictions through pre-hearing ex parte communications. **See Exhibit A.**

**C. Plaintiff's Case at FCI Lompoc   December 5, 2017: Fraudulent NIK Testing by Aguilar at FCI Lompoc**

SIS Technician S. Aguilar at FCI Lompoc conducted NIK tests on paper from intercepted mail. **Plaintiff created video evidence proving that burgundy is the baseline color that appears automatically without drugs, not a positive result. See Exhibit B. The video shows the blue reference square on the pouch, confirming only blue is positive. See Exhibit B.**

Aguilar misrepresented the burgundy result as positive, acting pursuant to Wade Jennings' fraudulent directive. **See Exhibit A.**

3

**Late December 2017 - February 2018: Aguilar's Pre-Hearing Threats
at FCI Lompoc**

**While Plaintiff was still at FCI Lompoc, SIS Technician Aguilar
threatened Plaintiff:**

- Offered minimal sanctions if Plaintiff did not "fight" the charges
- Threatened maximum sanctions and federal criminal prosecution if Plaintiff contested
- **This threat proves pre-hearing coordination with DHO Chetwood** (Aguilar could only offer specific sanctions if he had already discussed with DHO what would be imposed)
- **This violates *Wolf v. McDonnell* requiring impartial tribunals**

**February 13, 2018: Rigged DHO Hearing at FCI Lompoc**

DHO Chetwood falsely claimed to be "impartial" despite receiving ex parte communications from Aguilar pursuant to the "one team" policy. **See Exhibits A and D.**

DHO Chetwood found Plaintiff guilty based solely on the fraudulent NIK test and imposed sanctions. **See Exhibit D.**

**February 2018 - June 2018: SHU Confinement at FCI Lompoc (Approximately 6 Months)**

Plaintiff was confined based on the fraudulent conviction and rigged hearing.

**Post-June 2018: Punitive Transfer from FCI Lompoc to FCI Sheridan**

Plaintiff was transferred to FCI Sheridan as punitive consequence of the fraudulent conviction.

———————————————

**PHASE 2: Retaliation for Federal Litigation at FCI Sheridan (SEPARATE VIOLATION)**

**A. Habeas Petition Filed at FCI Sheridan**    While housed at FCI Sheridan, Plaintiff filed a § 2241 habeas petition challenging his fraudulent conviction.

**B. Discovery of Lynn Emails**    During habeas research, Plaintiff obtained copies of the internal Lynn Emails and other documents proving the BOP-wide "one team" conspiracy. **See Exhibit A.**

**C. Retaliatory Threat by Lt. Johnson at FCI Sheridan (DISTINCT FROM AGUILAR'S LOMPOC THREATS)   CRITICAL DISTINCTION:**

**Lt. Johnson was NOT at FCI Lompoc during the initial incidents, the incident report filing, or the pre-hearing coercion by Aguilar.**

**Lt. Johnson WAS at FCI Sheridan AFTER Plaintiff's transfer.**

**Lt. Johnson confronted Plaintiff AFTER Plaintiff filed his habeas petition AND AFTER Plaintiff obtained the Lynn Emails proving the conspiracy.**

**Lt. Johnson threatened Plaintiff with indefinite SHU confinement if he did not abandon his federal litigation.**

**This is RETALIATION for exercising the First Amendment right to access the federal courts—a SEPARATE, INDEPENDENT violation.**

———————————

## III. LEGAL STANDARD

A party seeking a temporary restraining order or preliminary injunction must demonstrate: (1) likelihood of success on the merits; (2) likelihood of irreparable harm absent preliminary relief; (3) that the balance of equities tips in the movant's favor; and (4) that an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

"When constitutional rights are threatened or impaired, irreparable injury is presumed." *Elrod v. Burns*, 427 U.S. 347, 373 (1976).

———————————

## IV. ARGUMENT

**A. Plaintiff Is Likely to Succeed on the Merits**

**1. *Wolf v. McDonnell* Violation - Phase 1 at FCI Lompoc  BOP systematically violated *Wolf v. McDonnell* through the "one team" policy and Aguilar's pre-hearing threats.**

R. John Lynn's email explicitly authorized ex parte communications between investigators and adjudicators: "Please be sure to communicate with your DHO." **See Exhibit A.**

Aguilar's threat to Plaintiff (offering a "deal" for specific sanctions) proves pre-hearing coordination with DHO Chetwood. **See Exhibits A and D.**

**Plaintiff is likely to succeed because *Wolf v. McDonnell* clearly established 50 years ago that inmates are entitled to impartial tribunals free from ex parte communications.** No reasonable officer could believe R. John Lynn's "one team" directive satisfies constitutional requirements.

**2. Retaliation for Court Access - Phase 2 at FCI Sheridan   Lt. Johnson's threat to Plaintiff—indefinite SHU if he does not abandon federal litigation—is explicit retaliation for exercising the First Amendment right to access courts.**

5

The right to petition federal courts is clearly established law. Retaliation for such petitioning violates the First Amendment. *Shakur v. Artson*, 952 F.3d 1095 (9th Cir. 2020).

**Plaintiff is likely to succeed because:** - The right to access courts is clearly established - Lt. Johnson's threat explicitly targeted Plaintiff's federal litigation - This constitutes per se retaliation and abuse of process

**3. False Imprisonment Based on Fraudulent Evidence and Rigged Tribunal   Plaintiff was imprisoned based on: - Scientifically false evidence (burgundy misrepresented as positive) See Exhibit B** (Plaintiff's video proves it's baseline color) - **Rigged hearing tainted by ex parte communications See Exhibits A and D**

**Plaintiff is likely to succeed on false imprisonment and FTCA claims.**

**B. Plaintiff Will Suffer Irreparable Harm Absent Injunctive Relief**

**1. Evidence at Imminent Risk of Destruction   Evidence proving both Phase 1 (Lompoc fraud) and Phase 2 (Sheridan retaliation):** - Internal BOP emails and directives **See Exhibit A** - Communications between Aguilar and DHO Chetwood at FCI Lompoc - Communications between Lt. Johnson and Plaintiff at FCI Sheridan - **Plaintiff's YouTube video (Exhibit B)** proving burgundy is baseline color

**This evidence stored on BOP servers can be destroyed instantly.** Once destroyed, it cannot be recovered.

**BOP has a documented history of destroying evidence.** Without immediate preservation order, this critical evidence will be destroyed.

**2.   Ongoing Constitutional Violations Against Current Inmates Right now, thousands of federal inmates are being subjected to:** - Rigged hearings where SIS and DHOs engage in ex parte communications (**Phase 1 pattern**) - False convictions based on burgundy NIK results **See Exhibit B** - Retaliation if they challenge NIK results or file federal litigation (**Phase 2 pattern**)

**3. Continuing Threat of Retaliation Against Plaintiff   Lt. Johnson's threat at FCI Sheridan was not an isolated incident but part of BOP's coordinated response to suppress federal litigation.**

**Immediate injunction needed to prevent further retaliation for Plaintiff's ongoing litigation.**

### C. Balance of Equities Favors Plaintiff

The requested relief—evidence preservation, ceasing ex parte communications, ceasing retaliation—imposes minimal burden on BOP while protecting fundamental constitutional rights.

BOP has no legitimate interest in: - Destroying evidence of fraud - Denying fair tribunals - Retaliating for federal litigation

**The balance overwhelmingly favors Plaintiff.**

### D. Public Interest Favors Injunctive Relief

The public has paramount interest in: - Preventing government fraud and retaliation - Ensuring constitutional compliance - Protecting inmates' right to access courts - Preserving evidence of government misconduct

**Public interest strongly favors injunctive relief.**

---

## V. CONCLUSION

This case involves **two distinct phases of constitutional violations:**

**PHASE 1 (FCI Lompoc, December 2017 - February 2018):** - Fraudulent NIK testing by Aguilar - Pre-hearing threats and coercion by Aguilar coordinating with DHO Chetwood - Rigged hearing denying fair tribunal under *Wolf v. McDonnell* - False imprisonment based on fraud and rigged proceeding

**PHASE 2 (FCI Sheridan, After Habeas Filing):** - Retaliation by Lt. Johnson specifically targeting Plaintiff's federal litigation - Threat of indefinite SHU if Plaintiff did not abandon court access - Separate First Amendment and due process violations - Abuse of process and coercion

---

## VI. PROPOSED ORDER

**IT IS HEREBY ORDERED** that:

1. **All Defendants, their officers, agents, servants, employees, and attorneys, and all persons in active concert or participation with them, are IMMEDIATELY ENJOINED from destroying, deleting, or disposing of:**

   a. **PHASE 1 EVIDENCE (FCI Lompoc Fraud):**
      - All emails between SIS Technician Aguilar and DHO Chetwood
      - Incident Report No. 3084272 and related documents
      - All communications regarding Plaintiff's case
      - Wade Jennings' January 18, 2017 SIS Advisory **See Exhibit A**

7

- R. John Lynn's January 23-25, 2018 emails **See Exhibit A**

b. **PHASE 2 EVIDENCE (FCI Sheridan Retaliation):**
  - All emails, notes, and communications between Lt. Johnson and Plaintiff
  - All communications between Lt. Johnson and R. John Lynn regarding Plaintiff's federal litigation
  - All records of threats or conditions placed on Plaintiff regarding his habeas petition
  - Internal communications at FCI Sheridan regarding Plaintiff's case

c. **PLAINTIFF'S VIDEO EVIDENCE:**
  - **Plaintiff's YouTube video demonstrating burgundy is baseline color (Exhibit B)**
  - **Currently located at https://youtu.be/p8USQ642q7w**
  - **Defendants are enjoined from taking any action to cause removal, deletion, or unavailability of this video**

2. **BOP is IMMEDIATELY ENJOINED from:**

   a. **Engaging in ex parte communications between SIS investigators and DHO adjudicators** regarding pending or prospective disciplinary cases (addressing Phase 1 violation)

   b. **Implementing the "one team" policy** described in R. John Lynn's January 23, 2018 email **See Exhibit A**

   c. **Imposing additional disciplinary sanctions or retaliatory transfers against Plaintiff** based on his federal litigation or his prior habeas petition (addressing Phase 2 violation)

   d. **Threatening Plaintiff with any sanctions for exercising his right to access federal courts**

3. **BOP SHALL provide written notice to:**

   a. All current inmates that:
      - They have the right to laboratory confirmation of NIK results
      - Burgundy NIK Test U results are scientifically negative, not positive **See Exhibit B**
      - They have the right to challenge hearings tainted by ex parte communications
      - They have the right to petition federal courts without retaliation
   b. Plaintiff that:
      - He is under BOP protection from retaliation for federal litigation
      - BOP is prohibited from retaliatory measures
      - Evidence is being preserved

4. **Defendants SHALL file responses** within 7 days showing cause why Preliminary Injunction should not issue.

5. **Hearing on Preliminary Injunction** set for [DATE] at [TIME].

6. **This TRO shall remain in effect** until Preliminary Injunction hearing and further Court order.

7. **No bond required** (Plaintiff proceeding in forma pauperis; BOP suffers no harm from constitutional compliance).

───────────────────────────

DATED: November 16, 2025

Respectfully submitted,

───────────────────────────

**BILLY STEFFEY**
Plaintiff, Pro Se
Sacramento, CA

## VERIFICATION

I, Billy Steffey, declare under penalty of perjury that I have read this Motion, that the allegations are true and correct, and that immediate irreparable injury will result because:

1. Evidence proving Phase 1 and Phase 2 violations is at imminent risk of BOP destruction

2. Current inmates are being subjected to rigged hearings and retaliation right now

3. Every day of delay results in more false convictions, evidence destruction, and retaliation

**BILLY STEFFEY**
Plaintiff

9

# EXHIBIT A

## UNITED STATES DISTRICT COURT CENTRAL DISTRICT OF CALIFORNIA

**BILLY STEFFEY**, Plaintiff,

vs.

**COLETTE S. PETERS**, in her official capacity as Director of the Federal Bureau of Prisons; **SAFARILAND, LLC**; **SIS TECHNICIAN AGUILAR** (DOE 1); **SIS LIEUTENANT JOHNSON** (DOE 2); **REGIONAL SPECIAL INVESTIGATIVE AGENT JOHN LYNN** (DOE 3); **DHO WILLIAM J. CHETWOOD** (DOE 4); **DISCIPLINE HEARING OFFICERS** (DOES 5-12); **REGIONAL SPECIAL INVESTIGATIVE AGENTS** (DOES 13-22); and **DOES 23-50**, Defendants.

Case No.: _____

---

## EXHIBIT A

### JOHN LYNN EMAILS AND SIS ADVISORY

---

**Dated:** November 16, 2025

**Submitted by:**

**BILLY STEFFEY** Plaintiff, Pro Se Sacramento, CA (916) 955-6332 bsteffey@mac.com

1

**Chris Liwag - Fwd: Follow up - Suboxone related Incident Reports**

| | |
|---|---|
| **From:** | Robert J. Lynn |
| **To:** | Hernandez, Ismael |
| **Date:** | 1/25/2018 9:39 AM |
| **Subject:** | Fwd: Follow up - Suboxone related Incident Reports |

Can you please send this out to your DHOs as a follow up to your email from yesterday. Thanks

>>> Robert J. Lynn 1/24/2018 9:59 AM >>>
As a follow up conversation with Central Office, I would like to clarify that the first preferred method is to have a pharmacist or any Subject Matter Expert on the identification of medication such as a doctor or other medical staff verify the item is Buprenorphine HCL (Suboxone). They must submit a signed memorandum verifying their identification of the drug, which of course is attached to the IR. Good rule of thumb is if there are identifiers on the strip it should be taken to the SME. However, if the strip is cut up into several pieces and the SME can't identify the item as suboxone, then the NIK testing should take place as addressed below.

R. John Lynn, CSS (SIA)
Western Regional Office
7338 Shoreline Drive
Stockton, Ca
Office: ███████████

"Use your Tools and Resources to ensure success."

>>> Robert J. Lynn 1/23/2018 12:02 PM >>>

WXR SIS and Captains,

As a reminder, if you or your staff write an Incident Report relating to the possession of Buprenorphine (Suboxone is the brand name) that you must test the substance Using NIK Test Kit "A" then "U" then "K." (As outlined in the attached SIS Advisement, and NIK Test chart) A colored photograph of the strips and the NIK tests should also be attached to the Incident Report. If they are full strips with the N8 stamp on them, then you should also have your local pharmacist submit a supporting memorandum identifying it as Buprenorphine (Brand name Suboxone).

In addition ensure you clearly identify who conducted the NIK test in the Incident report. If it is not the author of the IR, then a supporting memorandum should be attached from who did the testing. Furthermore, ensure the staff member who tests the narcotics is certified to do so. (See attached current WXR roster ran today, January 23, 2018. All SIS staff and Lieutenants should be certified.)

We have lost too many Incident Reports to appeals based on staff not being certified.

identifying the drug by the brand name Suboxone instead of the drug name
Buprenorphine, not identifying the person who conducted the testing and/or not testing with
A, U and K. If you fail to do any of these steps, the inmate will win his appeal because OGC will
not support you IR without these steps being followed.

You guys do an outstanding job identifying those inmates introducing, possessing and selling
drugs. But we must do all that we must do to hold these inmates accountable.

Please review and use the following attachments and IR examples. Like always, please be sure
to communicate with your DHO. They will provide you guidance and advise on what they
review on their side of the house (legal side) to ensure all supporting documentation and
evidence is present . Remember we are all on one team and at the end of the day, all of
us want to make sure we are holding the inmates accountable for their actions.

WXRO appreciates, recognize and thanks you for your hard work on combating our drug
problems in our region. But lets not let the inmates beat us based on technicalities.

Contact me if you have any questions. John

R. John Lynn, CSS (SIA)
Western Regional Office
7338 Shoreline Drive
Stockton, Ca
Office:

"Use your Tools and Resources to ensure success."

Page 1 of 2

*Internal emails !!*

## Chris Liwag - Fwd: Follow up - Suboxone related Incident Reports

From:    Robert J. Lynn
To:      Hernandez, Ismael
Date:    1/25/2018 9:39 AM
Subject: Fwd: Follow up - Suboxone related Incident Reports

Can you please send this out to your DHOs as a follow up to your email from yesterday. Thanks

>>> Robert J. Lynn 1/24/2018 9:59 AM >>>
As a follow up conversation with Central Office, I would like to clarify that the first preferred method is to have a pharmacist or any Subject Matter Expert on the identification of medication such as a doctor or other medical staff verify the item is Buprenorphine HCL (Suboxone). They must submit a signed memorandum verifying their identification of the drug, which of course is attached to the IR. Good rule of thumb is if there are identifiers on the strip it should be taken to the SME. However, if the strip is cut up into several pieces and the SME can't identify the item as suboxone, then the NIK testing should take place as addressed below.

R. John Lynn, CSS (SIA)
Western Regional Office
7338 Shoreline Drive
Stockton, Ca
Office: █████████

"Use your Tools and Resources to ensure success."

>>> Robert J. Lynn 1/23/2018 12:02 PM >>>

WXR SIS and Captains,

As a reminder, if you or your staff write an Incident Report relating to the possession of Buprenorphine (Suboxone is the brand name) that you must test the substance Using NIK Test Kit "A" then "U" then "K." (As outlined in the attached SIS Advisement, and NIK Test chart) A colored photograph of the strips and the NIK tests should also be attached to the Incident Report. If they are full strips with the N8 stamp on them, then you should also have your local pharmacist submit a supporting memorandum identifying it as Buprenorphine (Brand name Suboxone).

In addition ensure you clearly identify who conducted the NIK test in the Incident report. If it is not the author of the IR, then a supporting memorandum should be attached from who did the testing. Furthermore, ensure the staff member who tests the narcotics is certified to do so. (See attached current WXR roster ran today, January 23, 2018. All SIS staff and Lieutenants should be certified.)

We have lost too many Incident Reports to appeals based on staff not being certified,

identifying the drug by the brand name Suboxone instead of the drug name Buprenorphine, not identifying the person who conducted the testing and/or not testing with A, U and K. If you fail to do any of these steps, the inmate will win his appeal because OGC will not support you IR without these steps being followed.

You guys do an outstanding job identifying those inmates introducing, possessing and selling drugs. But we must do all that we must do to hold these inmates accountable.

Please review and use the following attachments and IR examples. Like always, please be sure to communicate with your DHO. They will provide you guidance and advise on what they review on their side of the house (legal side) to ensure all supporting documentation and evidence is present . Remember we are all on <u>one</u> team and at the end of the day, all of us want to make sure we are holding the inmates accountable for their actions.

WXRO appreciates, recognize and thanks you for your hard work on combating our drug problems in our region. But lets not let the inmates beat us based on technicalities.

Contact me if you have any questions. John

R. John Lynn, CSS (SIA)
Western Regional Office
7338 Shoreline Drive
Stockton, Ca
Office: ███████████

"Use your Tools and Resources to ensure success."

## Chris Liwag - Suboxone related Incident Reports

**From:** Robert J. Lynn
**To:** Captains WXRO;  SIA/SIS LT's;  SIS SHOPS
**Date:** 1/23/2018 12:02 PM
**Subject:** Suboxone related Incident Reports
**CC:** WXR CORR SERV
**Attachments:** NIK IR2.pdf; NIKSISAdvisory (Jan 2017).pdf; NIK IR1.pdf; NIK IR3.pdf; CSV-0660-VXX.pdf

WXR SIS and Captains,

As a reminder, if you or your staff write an Incident Report relating to the possession of Buprenorphine (Suboxone is the brand name) that you must test the substance Using NIK Test Kit "A" then "U" then "K." (As outlined in the attached SIS Advisement, and NIK Test chart) A colored photograph of the strips and the NIK tests should also be attached to the Incident Report. If they are full strips with the N8 stamp on them, then you should also have your local pharmacist submit a supporting memorandum identifying it as Buprenorphine (Brand name Suboxone).

In addition ensure you clearly identify who conducted the NIK test in the Incident report. If it is not the author of the IR, then a supporting memorandum should be attached from who did the testing. Furthermore, ensure the staff member who tests the narcotics is certified to do so. (See attached current WXR roster ran today, January 23, 2018. All SIS staff and Lieutenants should be certified.)

We have lost too many Incident Reports to appeals based on staff not being certified, identifying the drug by the brand name Suboxone instead of the drug name Buprenorphine, not identifying the person who conducted the testing and/or not testing with A, U and K. If you fail to do any of these steps, the inmate will win his appeal because OGC will not support you IR without these steps being followed.

You guys do an outstanding job identifying those inmates introducing, possessing and selling drugs. But we must do all that we must do to hold these inmates accountable.

Please review and use the following attachments and IR examples. Like always, please be sure to communicate with your DHO. They will provide you guidance and advise on what they review on their side of the house (legal side) to ensure all supporting documentation and evidence is present . Remember we are all on <u>one</u> team and at the end of the day, all of us want to make sure we are holding the inmates accountable for their actions.

WXRO appreciates, recognize and thanks you for your hard work on combating our drug

```
** SIS ADVISORY **
January 18, 2017
"Buprenorphine HCL (Suboxone) Incident Reports"

Federal Bureau of Prisons              COMM:
Intelligence Section                   FAX:
320 First Street, NW - Room 543        LAN ID:     ████████████████
Washington, DC 20534


                                       Brad Trate, Administrator
                                       Correctional Services Branch

M. Wade Jensen                         Kevin Schwinn, Chief
Operations Intelligence Officer        Intelligence Section
Intelligence Section
```

TO: Regional Directors/All ROs; BOP-CPD/Assistant Director;
Warden/All Insts; SIS/All ROs; Corr Svc/All ROs; SIS/All Insts; Corr
Svcs/All Insts; BOP-CPD/SIS; BOP-CPD/SIU; BOP-CPD/CTU; BOP-CPD/PMB
Intel

PURPOSE:   Update Field Test Kits for Buprenorphine HCL (Suboxone) and
           Clarify Incident Report Writing:

DISCUSSION: This is an update to the SIS Advisory dated September 29, 2015.

The SAFARILAND Company has informed Central Office Intelligence
Section of an update to the reported color results when testing for
Buprenorphine HCL.  In the September 29, 2015 SIS Advisory, the color
change in NIK Test U - Methamphetamine Reagent - was reported as
BROWN.  The color change should have been reported as BURGANDY.

The NIK Polytesting procedure for the detection of Buprenorphine HCL
is a combination of A, U, K tests.

NIK Test A - Marquis Reagent - results are purple
NIK Test U - Methamphetamine Reagent - results are **BURGANDY**
NIK Test K - Opiates Reagent - results are purple

It should be noted Heroin and Buprenorphine HCL will result in a
similar purple color, but Heroin will change from green to purple
while Buprenorphine HCL will go directly to purple.  When using NIK
Field Tests, staff should only report the test results.

UNCLASSIFIED/LIMITED OFFICIAL USE ONLY/LAW ENFORCEMENT SENSITIVE
This document is marked Unclassified/Limited Official Use Only/Law Enforcement Sensitive and may be disseminated, with proper attribution,
to active Law Enforcement, DOD, or U.S. Intelligence Agencies. This document, or any segment/attachment thereof, may not be released
without the approval of the Bureau of Prisons to any media sources, any non-law enforcement entity, the general public or those without a
"need to know." It contains information that may be exempt from public release under the provisions of the Privacy Act (5 U.S.C. 552).





**ACTION REQUESTED**: The Special Investigative Supervisors (SIS) are asked to advise the staff of the information contained in this alert. If a recovered substance is suspected Buprenorphine HCL (Suboxone), it is **preferred** a pharmacist identify the substance as Buprenorphine HCL (Suboxone). The supporting memo from the pharmacist should be attached to the incident report along with photographs of the evidence and no NIK Field Test is necessary. If the recovered substance cannot be positively identified as Buprenorphine HCL (Suboxone) by a pharmacist, staff should treat the substance as a completely unknown narcotic and conduct the appropriate NIK testing sequence. Photographs of the evidence and completed NIK Field Tests should be attached to the incident report.

**REMEMBER**: In Block 11 of the incident report, the substance should be referred to as unknown or unidentified and all NIK Field Test results should be detailed. Example incident reports are attached.

UNCLASSIFIED/LIMITED OFFICIAL USE ONLY/LAW ENFORCEMENT SENSITIVE

This document is marked Unclassified/Limited Official Use Only/Law Enforcement Sensitive and may be disseminated, with proper attribution, to active Law Enforcement, DOD, or U.S. Intelligence Agencies. This document, or any segment/attachment thereof, may not be released without the approval of the Bureau of Prisons to any media sources, any non-law enforcement entity, the general public or those without a "need to know." It contains information that may be exempt from public release under the provisions of the Privacy Act (5 U.S.C. 552).

problems in our region. But lets not let the inmates beat us based on technicalities.

Contact me if you have any questions. John

R. John Lynn, CSS (SIA)
Western Regional Office
7338 Shoreline Drive
Stockton, Ca
Office: ████████

"Use your Tools and Resources to ensure success."

9/5/2018

# EXHIBIT B

## UNITED STATES DISTRICT COURT CENTRAL DISTRICT OF CALIFORNIA

**BILLY STEFFEY**, Plaintiff,

vs.

**COLETTE S. PETERS**, in her official capacity as Director of the Federal Bureau of Prisons; **SAFARILAND, LLC**; **SIS TECHNICIAN AGUILAR** (DOE 1); **SIS LIEUTENANT JOHNSON** (DOE 2); **REGIONAL SPECIAL INVESTIGATIVE AGENT JOHN LYNN** (DOE 3); **DHO WILLIAM J. CHETWOOD** (DOE 4); **DISCIPLINE HEARING OFFICERS** (DOES 5-12); **REGIONAL SPECIAL INVESTIGATIVE AGENTS** (DOES 13-22); and **DOES 23-50**, Defendants.

Case No.: _____

---

## EXHIBIT B

### VIDEO EVIDENCE

---

**Dated:** November 16, 2025

**Submitted by:**

**BILLY STEFFEY** Plaintiff, Pro Se Sacramento, CA (916) 955-6332 bsteffey@mac.com

1

https://youtu.be/p8USQ642q7w

## Key Evidentiary Points from Video

### Stated Purpose and Core Claim

The video's stated purpose is to demonstrate that the NIK tests used by the Bureau of Prisons provide negative results, which are then falsely reported as positive [00:00, 01:06].

Core Allegation: The BOP interprets a "dark burgundy color" on NIK Test U as a "positive result for amphetamines" [00:49, 00:59], which the demonstrator claims is actually a negative result [01:06, 04:38].

### Background Documentation Referenced

- The video shows incident reports documenting disciplinary actions based on burgundy test results [00:15, 00:26]
- An SIS (Special Investigative Services) report is displayed stating: "use Nick Kit test U and it turned an immediate dark burgundy color indicating amphetamines" [00:45, 00:55]
- The SIS report explicitly states: "The test indicated a positive result for amphetamines" [00:59]

### Demonstration 1: Plain Paper Test

1. A sealed NIK Test U pouch is displayed [01:35, 01:40]
2. A small strip of standard Hammermill printer paper is cut from a new stack [01:20, 01:53]
3. The plain paper strip is placed into the Test U pouch [02:28, 02:33]
4. The chemical ampoules in the pouch are broken from left to right per instructions [02:39]
5. The liquid in the pouch immediately turns burgundy color [02:56, 03:14]

Narration at 02:56: "You can already see the thing turning burgundy right now. So, this is a brand new piece of paper out of a stack of printer paper. That is your burgundy result that you took away my 41 good days." [02:56]

### Demonstration 2: Empty Test Pouch (No Substance)

1. A new, sealed NIK Test U pouch is opened [03:59, 04:01]
2. No substance is placed inside the pouch [04:07]
3. Narration at 04:07: "I'm not even opening it and putting anything in it. I'm going to break these as it says." [04:07]
4. The chemical ampoules are broken [04:08]
5. The chemicals alone turn burgundy color [04:29, 04:33]

### Critical Color Reference Observation

The demonstrator notes that the test pouch itself contains a blue color reference square at the top [04:24, 04:26].

**Narration at 04:26:** "You can see that on the top of the test there's a blue color to match it with because only blue is positive." [04:26]

**Conclusions Stated in Video**

- **At 04:33:** "This test with nothing in it, just the chemicals alone turned burgundy as it should because that's a negative drug test." [04:33]
- **At 04:38:** "And this is what you guys are locking people up for and punishing people just because you have an issue with them or you want to get rid of them for whatever reason." [04:38]
- **At 04:49:** "The nick tests are documented burgundy and you're claiming that's positive. It is not positive." [04:49]

**Alleged Consequences Referenced**

The video references the following consequences of burgundy test results being reported as positive:

- Loss of good time credits (41 days specifically mentioned) [02:59]
- Transfer to higher security facilities [03:19]
- Extended time in segregated housing (SHU) [03:19]
- Separation from families and loss of visitation rights [03:34, 03:40]

---

**Note:** These exhibits are marked for identification and reference purposes in connection with the subject matter of this proceeding.

# EXHIBIT C

## UNITED STATES DISTRICT COURT CENTRAL DISTRICT OF CALIFORNIA

**BILLY STEFFEY**, Plaintiff,

vs.

**COLETTE S. PETERS**, in her official capacity as Director of the Federal Bureau of Prisons; **SAFARILAND, LLC**; **SIS TECHNICIAN AGUILAR** (DOE 1); **SIS LIEUTENANT JOHNSON** (DOE 2); **REGIONAL SPECIAL INVESTIGATIVE AGENT JOHN LYNN** (DOE 3); **DHO WILLIAM J. CHETWOOD** (DOE 4); **DISCIPLINE HEARING OFFICERS** (DOES 5-12); **REGIONAL SPECIAL INVESTIGATIVE AGENTS** (DOES 13-22); and **DOES 23-50**, Defendants.

Case No.: _____

_____

## EXHIBIT C

### CLARK BAILEY INCIDENT REPORT

_____

**Dated:** November 16, 2025

**Submitted by:**

**BILLY STEFFEY** Plaintiff, Pro Se Sacramento, CA (916) 955-6332 bsteffey@mac.com

1

BP-A0288
JAN 17

**INCIDENT REPORT**

**U.S. DEPARTMENT OF JUSTICE**          **FEDERAL BUREAU OF PRISONS**

---

### Part I - Incident Report

| 1. Institution: FCI Herlong | | Incident Report Number: 3025931 | |
|---|---|---|---|
| 2. Inmate's Name: <br> Clark Bailey | 3. Register Number: <br> 64110-065 | 4. Date of Incident: <br> August 24, 2017 | 5. Time: <br> 3:00p.m. |
| 6. Place of Incident: <br> Tahoe Delta, Cell 111 | 7. Assignment: <br> Yard PME | | 8. Unit: <br> Tahoe Delta |

| 9. Incident: | 10. Prohibited Act Code(s) |
|---|---|
| Introduction or making of any drugs or alcohol | 111 |
| Possession of any drugs or alcohol | 113 |

11. Description of Incident (Date: 08/24/2017   Time: 3:00 p.m. Staff became aware of incident):

After the completion of an SIS investigation it is determined that; On August 24, 2017, at approximately 3:00pm, staff conducted a random cell search of Tahoe Delta, cell 111, at the time assigned to inmates Clark Bailey, Reg. No. 64110-065 and Travis Donovan, Reg. No. 46939-048. While conducting the search staff located what appeared to be hand written instructions of which website to visit for the purpose of purchasing K-2 spice, a form of synthetic cannabis; furthermore, how to properly saturate greeting cards using a liquid form of K-2 spice and introduce them to Correctional Facilities through the mail room using the U.S Postal Service (USPS). The hand written instructions were located in the common area of the cell, placed on the ground next to the inmate assigned lockers concealed inside a box of laundry soap which was under some clothing items baring inmate Bailey's identifying information. While inventorying the property located inside inmate Bailey's assigned secure inmate locker, staff located three (3), one (1) half greeting cards which appeared to have been saturated in an unknown substance causing them to be malleable and on one card which had a hand written message for the ink to become bleary and for said ink to bleed through the greeting card. The three (3) half cards were tested by SIS for the presence of a foreign substance utilizing the NIK testing procedures outlined in an SIS ADVISORY dated March 27, 2017. Testing procedures produced a positive results for Methamphetamine Reagent which indicates the presence of Amphetamine by results turning burgundy in color. It is concluded that the instructions found in the common area of cell 111, were utilized to introduce narcotics to FCI Herlong, some of which were located inside inmate Bailey's inmate assigned secure locker, at which the time it was under his (Bailey's) dominion.

***This incident report was re-written pending the completion of an SIS investigation.***

| 12. Typed Name/Signature of Reporting Employee: <br> A. Potichkin  / | 13. Date And Time: <br> September 20, 2017  /   6:50a.m. |
|---|---|
| 14. Incident Report Delivered to Above Inmate By <br> (Type Name/Signature): <br> J. Rodgers / | 15 .Date Incident Report Delivered: <br> 9-20-17 | 16. Time Incident Report Delivered: <br> 9:20am |

### Part II - Committee Action

17. Comments of Inmate to Committee Regarding Above Incident:

Inmate declined to make A statement at this time.

---

| 18. A. It is the finding of the committee that you: | B. | X The Committee is referring the Charge(s) to the DHO for further Hearing. |
|---|---|---|
| ____ Committed the Prohibited Act as charged. <br> ____ Did not Commit a Prohibited Act. <br> ____ Committed Prohibited Act Code(s). ____  ____ | C. | X The Committee advised the inmate of its finding and of the right to File an appeal within 20 calendar days. |

19. Committee Decision is Based on Specific Evidence as Follows:

Referred to the DHO based on severity of charge.

20. Committee action and/or recommendation if referred to DHO (Contingent upon DHO finding inmate committed prohibited act):

GCT, DS, LP Comm, Phone, E-mail

21. Date and Time of Action: 9-20-17 12:00 (The UDC Chairman's signature certifies who sat on the UDC and that the completed report accurately reflects the UDC proceedings).

M. Dixon /

| Chairman (Typed Name/Signature) | Member (Typed Name) | Member (Typed Name) |
|---|---|---|

# EXHIBIT D

## UNITED STATES DISTRICT COURT CENTRAL DISTRICT OF CALIFORNIA

**BILLY STEFFEY**, Plaintiff,

vs.

**COLETTE S. PETERS**, in her official capacity as Director of the Federal Bureau of Prisons; **SAFARILAND, LLC**; **SIS TECHNICIAN AGUILAR** (DOE 1); **SIS LIEUTENANT JOHNSON** (DOE 2); **REGIONAL SPECIAL INVESTIGATIVE AGENT JOHN LYNN** (DOE 3); **DHO WILLIAM J. CHETWOOD** (DOE 4); **DISCIPLINE HEARING OFFICERS** (DOES 5-12); **REGIONAL SPECIAL INVESTIGATIVE AGENTS** (DOES 13-22); and **DOES 23-50**, Defendants.

Case No.: _____

---

## EXHIBIT D

### DHO CHETWOOD'S DECLARATION

---

**Dated:** November 16, 2025

**Submitted by:**

**BILLY STEFFEY** Plaintiff, Pro Se Sacramento, CA (916) 955-6332 bsteffey@mac.com

1

Case 3:19-cv-00093-JR    Document 12    Filed 03/06/19    Page 1 of 8
Case 2:25-cv-11105-VBF-SK    Document 12    Filed 11/19/25    Page 25 of 32    Page ID
#:144

**BILLY J. WILLIAMS, OSB #901366**
United States Attorney
**JARED D. HAGER, WSB #38961**
Assistant United States Attorney
U.S. Attorney's Office for the District of Oregon
1000 SW Third Avenue, Suite 600
Portland, Oregon 97204-2902
Phone: 503.727.1120
Email: jared.hager@usdoj.gov
    Attorneys for the Respondent

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

| | |
|---|---|
| **BILLY F. STEFFEY**, | Case No.: 3:19-cv-00093-JR |
| Petitioner, | |
| v. | DECLARATION OF WILLIAM J. CHETWOOD |
| **WARDEN J. SALAZAR**, | |
| Respondent. | |

## DECLARATION OF WILLIAM J. CHETWOOD

I, William J. Chetwood hereby declare:

1.      I am currently employed by the Federal Bureau of Prisons (BOP) as a Discipline Hearing Officer (DHO) at the Federal Correctional Institution in Lompoc, CA.  I have been employed by the BOP since December 6, 1998.  I have served as the DHO at FCI Lompoc since 2015.

2.      I am making this declaration in the case of Billy F. Steffey, Jr. v. Warden J. Salazar, Case No. 3:19-cv-00093-JR, wherein inmate Billy F. Steffey, Jr., Register Number 68463-097, ("Petitioner"), has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241, challenging the findings of my February 16, 2018 DHO report.

3.      As a part of my routine duties I have access to various records kept in the regular course of business containing information about the inmate population. One record system is called SENTRY.  SENTRY indicates Petitioner was sentenced on August 7, 2014 to 84 months of imprisonment for violations of 18 USC § 371; § 1029(a)(2); § 1029(c)(1)(A)(i); and § 1028A (conspiracy to traffic in and use one or more counterfeit devices to obtain things in value in excess of $1,000; and aggravated identity theft).  Petitioner is currently housed at the Federal Correctional Institution (FCI), Sheridan, OR.  His projected release date is November 2, 2020.  Petitioner was housed at FCI Lompoc, CA, at the time of his prohibited act and my disciplinary decision.

4.      Petitioner argues I was not fair and impartial in my role as DHO (see Petition at 6-7).  He also contends I did not have adequate evidence upon which to base my decision.  Specifically, Petitioner claims the drugs attributed to him were contained in an envelope addressed to another inmate (hereinafter "Inmate X") (id. at 16); the Narcotics Identification Kit (NIK) used to detect the results I relied upon is not designed to identify the drugs attributed to Petitioner (i.e.

amphetamines) (id. at 7); I failed to confirm the kit was not "expired" (id.);  lab tests were conducted which exonerated Petitioner but were not revealed to him (id. at 16); and NIK results are rampantly falsified by BOP staff to intentionally generate false positives (id. at 17).

5.    My responsibilities as DHO consist of conducting administrative hearings for inmates alleged to have committed rule violations established by BOP policy.  I make my determinations based on established policy, available evidence, inmate statements, witness statements, and sound correctional judgment.  I have attended DHO training and am certified in DHO policies and procedures.  I have access to DHO Reports, Incident Reports, Inmate Disciplinary Records, staff memoranda, and inmate statements to form the basis of my decision.

6.    The current inmate disciplinary policy is Program Statement 5270.09, Inmate Discipline Program, which was issued on June 20, 2011 and made effective for all violations committed on or after August 1, 2011.  A true and correct copy of the program statement is attached as Exhibit ("Ex.") A.  My responsibilities as DHO consist of conducting administrative hearings for inmates alleged to have committed rule violations established by BOP policy.  The BOP has implemented policy and procedures for inmate discipline to promote a safe and orderly institution environment.

7.    I am an impartial hearing officer who does not investigate or have any prior knowledge concerning an alleged rule violation before it is referred to me for consideration.  My impartiality is determined by my status as one "who was not a victim, witness, investigator, or otherwise significantly involved in the incident." See Ex. A at 27.

8.    The discipline process begins when a staff member witnesses or reasonably believes an inmate has committed a prohibited act.  See Ex. A at 17 (citing 28 CFR § 541.5).  Attached as Ex. B is a true and correct copy of incident

Steffey v. Salazar                                          Declaration of
Case No. 3:19-cv-00093-JR                          William J. Chetwood

Case 3:19-cv-00093-JR    Document 12    Filed 03/06/19    Page 4 of 8
Case 2:25-cv-11105-VBF-SK    Document 12    Filed 11/19/25    Page 28 of 32    Page ID
#:147

report number 3084272. This is the report that initiated the disciplinary process against Petitioner for BOP prohibited act code 111 (introduction of narcotics). See Ex. B at sections 9-10. On January 31, 2018, at 7:40 pm, Special Investigative Support (SIS) Technician S. Aguilar delivered the incident report to Petitioner. The report clearly identified the charges levied against Petitioner along with a description of the incident and evidence relied upon. Id. at sections 9-11.

9.    A Unit Discipline Committee (UDC) will review the incident report once the staff investigation is complete. See Ex. A at 23 (citing 28 CFR § 541.7). Serious incidents will be referred to the DHO for further review. Id.

10.    Attached as Ex. C is a true and correct copy of Notice of Hearing before the DHO, signed by Petitioner on February 5, 2018.

11.    Attached as Ex. D is a true and correct copy of Inmate Rights at a Discipline Hearing, also signed by Petitioner on February 5, 2018.

12.    Attached as Ex. E is a true and correct copy of my DHO report. I held the DHO hearing on February 13, 2018. See Ex. E at section I(B). Inmates are permitted to make a statement and present documentary evident to the DHO during the hearing. I documented Petitioner's oral statements in my report. Id. at section III(B) and V(2). I also considered Petitioner's prior statements to the UDC. Id. at V(3).

13.    Attached as Ex. F is a true and correct copy of the supportive evidentiary materials I relied upon to make my decision. In addition to the oral statements made by Petitioner to me and the UDC, I considered a list of written objections provided to me by Petitioner at the hearing. See Ex. F at 17. I address all points raised by Petitioner in my report. See Ex. E at section V(7).

14.    Based on my several years of experience as a correctional worker and the methods typically used by inmates to arrange introduction of drugs and other contraband, basic code is typically used to discuss logistical details in the belief it

Steffey v. Salazar                                    Declaration of
Case No. 3:19-cv-00093-JR                             William J. Chetwood

will not garner the attention of BOP.  As on the streets, illegal substances in prison are never discussed in such explicit terms.

15.    Petitioner exchanged several email messages from his BOP inmate email account with "Lisa Rassmussen E S Q," allegedly regarding several eviction notices for various tenants in a series of homes purportedly owned by Petitioner. Id. at section V(1).  Petitioner's messages with the sender repeatedly discuss and confirm payment being made to certain individuals.  Id.  The language is suspicious and clearly unrelated to any legal process: "Please resent that eviction again to the exact same tenant as you did last time.  Go heavy! . . . Please take care of what I paid you to do and serve the guy."  In response to a message from Petitioner, the sender states, "I reached out.  70171450000084946239" Id.  On December 5, 2017 the FCC Lompoc mailroom received an envelope with the tracking number 70171450000084946239 containing (10) unusually thick pieces of paper which tested positive for amphetamines.  See Ex. F at 5-9 (evidentiary photos).  The pages were, indeed, heavily soaked with liquid narcotics.  The key email communications between Petitioner and the sender on which I relied upon are included for the court's review.  Id. at 10-16.

16.    Petitioner appears to have raised an additional argument at the hearing he does not raise in the Petitioner.  Specifically, Petitioner claimed the legal mail addressed to another inmate should not have been opened.  Id. at ¶ 16.  Although Petitioner was aware through the incident report the seized envelope purportedly originated from an attorney, he was not told the item was sent as legal mail or satisfied BOP's legal mail requirements.  As stated in my report, the mail was not addressed to Petitioner, and Petitioner did not have standing to challenge or comment upon how mail to other inmates is handled.  Indeed, Petitioner did not assert he was aware Inmate X objected to testing or opening of the envelope.

Steffey v. Salazar                                                    Declaration of
Case No. 3:19-cv-00093-JR                                   William J. Chetwood

17.    In preparation for this declaration to the court I communicated with BOP agency counsel regarding the attorney who purportedly sent the legal mail to Inmate X.  The sender was identified as "Law Offices of Leslie R. Ramos, 901 H. St., Sacramento, CA 95814."  See Ex. E at Section V(1).  Agency counsel notified me he had contacted Ms. Ramos by telephone on February 25, 2019 to inquire about this incident.  Ms. Ramos stated she has never heard of Petitioner or any person named Lisa Rassmussen and sent no mail to FCI Lompoc.  She practices exclusively in state court.  Ms. Ramos also stated she had independently learned her name is being used by federal inmates as a false sender of bogus legal mail parcels.  In the past, envelopes with inadequate postage have been returned to her and their suspicious nature has prompted her to immediately contact local law-enforcement for testing and disposal of the mail.  Ms. Ramos has also notified the California State Bar Association of these events.

18.    Petitioner argues I was not impartial.  My impartiality is determined by my status as one "who was not a victim, witness, investigator, or otherwise significantly involved in the incident."  See Ex. A at 27.  Petitioner claims I made an arrangement with the reporting officer to not sanction Petitioner severely if Petitioner would "take the shot on the chin . . . [and] not fight, [Petitioner] would get minimal sanctions . . ."  See Petition at 7.  Petitioner then argues:

> I received a ridiculously lenient punishment.  I lost 41 good days and 180 days commissary.  I did not lose my visits.  I did not lose my email, I did not lose my phone.  I did not have to serve any DS [disciplinary segregation] time nor did I receive any monetary fine.  These sanctions show that there was definitely a pre-arranged deal between SIS Aguilar and DHO Chetwood.
>
> Id. at 16.

Steffey v. Salazar
Case No. 3:19-cv-00093-JR

Declaration of
William J. Chetwood

19.    This is a bizarre and incorrect argument.  As DHO I have several sanctions available based on the severity of the offense.  My sanctions for Petitioner were consistent with other decisions for similar offenses and entirely permissible under the CFR and disciplinary policy.  See Ex. A at 45-46.  That I did not subject Petitioner to the harshest and full panoply of all disciplinary sanctions is not evidence of collusion between me and SIA Aguilar.  In addition, Petitioner did not "take the shot on the chin" and articulated a host of objections at his hearing.  Rarely do I see inmates come prepared with detailed and extensive written objections as Petitioner did at his hearing.  Finally, despite claims from Petitioner he had no disciplinary segregation, he states clearly he was immediately placed in the Special Housing Unit (SHU) and remained there "for several weeks" prior to the hearing.  See Petition at 16.  I imposed a suspended sentence of 60 additional days of disciplinary segregation in SHU pending six months of clear conduct by Petitioner.  See Ex. E at VI.  I also imposed a suspended sentence of one year visitation privilege loss, also pending six months of clear conduct.  Id. While these sanctions are fair, they are by no means "ridiculously lenient."

20.    As with all my DHO decisions, I attempted to impose a fair and appropriate penalty upon my finding Petitioner had committed the prohibited act as charged.  I explained the reason for each sanction in my report.  Id. at section VII.

21.    Petitioner argues he was sent the envelope tracking number by mistake.  Id. at section V(7). atI found this argument incredible.

22.    Petitioner makes additional arguments about the NIK test itself.  He claims the kit is not designed to test for the drugs attributed to him: amphetamines.  See Petition at 7.  The NIK test clearly describes its use for testing amphetamines.  See Ex. F at 4 (table Test B summary).

23.    Petitioner also claims I failed to confirm the test was not expired.  See Petition at 7.  BOP inmates are regularly tested for drugs on a random basis and

Steffey v. Salazar                                                      Declaration of
Case No. 3:19-cv-00093-JR                                     William J. Chetwood

23.     Petitioner also claims additional tests were conducted which exonerate
Petitioner but were not provided to him nor considered by me as part of my
decision.  See Petition at 16.  This is incorrect.  No further testing was conducted
nor would I fail to consider any test reflecting contrary results from the positive
NIK result used to support my decision.

24.     Finally, Petitioner claims NIK results are "rampantly" falsified by
BOP staff to torment the inmate population.  Id.  I have no information to support
this claim nor do I believe it to be true.

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the
foregoing is true and correct.  Executed this 4th day of March 2019 at Lompoc, CA.

_____
William J. Chetwood

Steffey v. Salazar                                          Declaration of
Case No. 3:19-cv-00093-JR                          William J. Chetwood