FILED

CLERK, U.S. DISTRICT COURT

**NOV 19 2025**

CENTRAL DISTRICT OF CALIFORNIA

BY _____ rsm _____ DEPUTY

DOCUMENT SUBMITTED THROUGH THE
ELECTRONIC DOCUMENT SUBMISSION SYSTEM

# SUPPLEMENTAL MEMORANDUM

---

**BILLY STEFFEY**

Sacramento, CA

Plaintiff, Pro Se

---

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

---

**BILLY STEFFEY,**

Plaintiff,

   v.

**COLETTE S. PETERS,** in her official capacity as Director of the Federal Bureau of Prisons; M. WADE JENNINGS, in his individual and official capacity; KEVIN SCHWINN, in his individual and official capacity; **SAFARILAND, LLC;** R. JOHN LYNN, Regional Special Investigative Agent (DOE 1); **SIS TECHNICIAN S. AGUILAR,** (DOE 2); **SIS LIEUTENANT [FIRST NAME UNKNOWN] JOHNSON,** (DOE 3); **DISCIPLINE HEARING OFFICER WILLIAM J. CHETWOOD,** (DOE 4); **DOES 5-50,**

Defendants.

---

Case No.:   **2:25-CV-11105-VBF-SK**

---

1

# PLAINTIFF'S SUPPLEMENTAL MEMORAN-DUM OF LAW IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER

**[Addressing Procedural Thresholds: Ongoing Violations, Heck Exceptions, Equitable Tolling, and Systemic Deprivation of Due Process]**

_____

**Judge:** _____
**Date:** _____

_____

_____

## I. INTRODUCTION

Plaintiff Billy Steffey respectfully submits this Supplemental Memorandum to address threshold jurisdictional and procedural issues related to his pending Motion for Temporary Restraining Order ("TRO").

**This case presents an urgent matter of continuing systemic violation and public harm.** The fraudulent testing protocols and the "One Team" directives challenged herein are not merely historical errors. **They remain the active, operative policy of the Bureau of Prisons ("BOP") as of this filing.** The conspiracy to fabricate evidence, obstruct neutral decision-making, and deny due process did not end when Plaintiff was released—it is a standing, operational directive affecting thousands of federal inmates today.

**Most critically, this case reveals an ongoing, coordinated conspiracy to systematically deprive inmates of the neutral, impartial fact-finder guaranteed under _Wolf v. McDonnell_, 418 U.S. 539 (1974).** BOP Central Office executives are actively instructing all regional wardens and SIS personnel to conduct ex-parte communications with Discipline Hearing Officers (DHOs), explicitly employing the phrase "we are all one team," thereby destroying the procedural independence that constitutional due process mandates.

This Memorandum demonstrates that:

1. **Plaintiff's claims are not barred by _Heck v. Humphrey_ due to the "former prisoner" exception recognized in _Nonnette v. Small_**;

2. **The statute of limitations is tolled** by fraudulent concealment, equitable tolling principles, and the continuing violation doctrine—because the fraudulent policy remains active and operational, and because BOP deliberately conceals its ongoing violations;

2

3. **The Federal Tort Claims Act ("FTCA") provides a viable remedy** for these intentional, systemic torts under the law enforcement proviso;

4. ***Wolf v. McDonnell*'s guarantee of neutral fact-finders is being systematically violated through institutionalized "One Team" ex-parte communications.**

---

---

## II. ARGUMENT

---

### A. PLAINTIFF'S CLAIMS ARE NOT BARRED BY *HECK V. HUMPHREY* BECAUSE HE IS NO LONGER IN CUSTODY (THE *NONNETTE* EXCEPTION)

Defendants may argue that Plaintiff's claims for damages are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), because a judgment for Plaintiff would imply the invalidity of his disciplinary conviction. **This argument fails under controlling Ninth Circuit precedent.**

In *Nonnette v. Small*, 316 F.3d 872 (9th Cir. 2002), the Ninth Circuit established a crucial exception: ***Heck* does not bar a § 1983 or *Bivens* action by a former prisoner who is no longer in custody and therefore has no remedy through habeas corpus.**

**1. Habeas is Unavailable**   Plaintiff has been released from federal custody and is no longer serving a term of supervised release. Consequently, a petition for habeas corpus under 28 U.S.C. § 2241 is **moot and unavailable** to him. See *Spencer v. Kemna*, 523 U.S. 1, 7 (1998) (habeas petition moot when challenger released from custody).

**2. The *Nonnette* Application**   Because Plaintiff cannot use habeas to challenge the fraudulent NIK test results that deprived him of Good Conduct Time, **a civil rights action for damages is his only available remedy.** To deny this claim under *Heck* would leave Plaintiff with "no remedy for [the] alleged constitutional deprivation." *Nonnette*, 316 F.3d at 876.

The Ninth Circuit made clear that *Heck* serves to prevent premature collateral attacks on convictions while the habeas remedy remains available—not to bar all relief once habeas is foreclosed. *Id.* at 877. Here, because Plaintiff is no longer in custody, habeas relief is impossible, and *Heck* does not apply.

---

---

**B. THE STATUTE OF LIMITATIONS IS TOLLED BY THE DOC-
TRINE OF FRAUDULENT CONCEALMENT AND THE DISCOV-
ERY RULE**

Although the initial fraudulent testing regarding Plaintiff occurred in 2017–2018,
**Plaintiff's claims are timely.** Under federal law, a claim accrues when the
plaintiff "knows or has reason to know of the injury which is the basis of the
action." *Bilyeu v. Morgan Stanley Dean Witter & Co.*, 370 F.3d 1142, 1148
(9th Cir. 2004).

**1. Active Concealment**   Defendants engaged in a **sophisticated conspir-
acy to conceal the fraudulent nature of the NIK testing protocol.** The
"One Team" policy explicitly coordinated SIS investigators and DHO adjudica-
tors to uphold false convictions, preventing Plaintiff from discovering that the
"burgundy" result was scientifically impossible to be a positive result.

**Internal BOP emails—specifically the "Lynn Emails" and the SIS
Advisory—reveal directives instructing staff on how to manipulate
documentation to "avoid losing incident reports to appeals."** These
communications demonstrate **active concealment and suppression** of the
true nature of the test results. BOP staff were affirmatively instructed to docu-
ment results in ways that would withstand scrutiny and appeal.

**2. The Discovery Event**   Plaintiff did not, and could not, discover the
specific evidence of fraud (the "Lynn Emails" and the internal SIS Advisory
demonstrating the conspiracy) until **late 2019,** after his research for his habeas
petition. Only then did Plaintiff learn that:

- Regional SIA agents coordinated the misinterpretation of test results;
- BOP officials were explicitly instructed to document NIK results in ways
  that would prevent successful appeals;
- The "One Team" directive ensured DHOs would uphold fabricated results
  despite constitutional deficiencies;
- BOP Central Office was actively instructing all wardens and SIS personnel
  to violate the neutral decision-making process.

**This is not a case of delayed investigation—it is a case of deliber-
ate concealment.** Plaintiff could not have discovered this evidence through
reasonable diligence because BOP internal communications were not publicly
available and were actively shielded from inmate scrutiny.

**3. Equitable Tolling**   The Ninth Circuit recognizes that **fraudulent con-
cealment tolls the statute of limitations** where the defendant takes affir-
mative steps to mislead the plaintiff. *Guerrero v. Gates*, 442 F.3d 697, 706 (9th
Cir. 2006); *Conmar Corp. v. Mitsui & Co.*, 858 F.2d 499, 502 (9th Cir. 1988).

4

The elements of fraudulent concealment are met:

- **Wrongdoing by Defendants:** Fabrication of test results and coordination of a conspiracy to suppress challenges;
- **Concealment:** Active suppression of internal directives and communications revealing the scheme, with BOP o icials instructing staff to prevent appeals and maintain false convictions;
- **Plaintiff's Due Diligence:** Plaintiff exhausted administrative remedies, filed habeas, and conducted research; concealment prevented earlier discovery; also filed FOIA requests that were refused to continue hiding the truth
- **Timely Filing After Discovery:** Plaintiff filed this action within a reasonable time after discovering the concealed evidence.

Equitable tolling applies, and Plaintiff's claims are timely.

---

## C. THE CONTINUING VIOLATION DOCTRINE APPLIES BECAUSE THE FRAUDULENT POLICY IS STILL IN EFFECT TODAY

**The misconduct alleged is not a past, isolated incident.** It is a **single, continuous conspiracy that persists to this day.** Under the "continuing violation" doctrine, a plaintiff may challenge a series of related acts if they are part of a systematic policy or practice. *Douglas v. Cal. Dep't of Youth Auth.*, 271 F.3d 812, 822 (9th Cir. 2001); *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 380-81 (1982).

**1. The Policy is Ongoing  The "One Team" directive issued by Defendant Lynn and the SIS Advisory mandating the falsification of "burgundy" test results and systemic ex-parte communication with DHOs have never been rescinded.** They remain the **operative instructions for BOP staff nationwide.**

As of this filing, BOP continues to:

- Use NIK tests on paper substrates in violation of manufacturer warnings;
- Interpret burgundy results as positive despite manufacturer specifications requiring only blue as positive;
- Impose severe disciplinary sanctions without laboratory confirmation;
- **Instruct SIS investigators and Regional Officials to conduct regular ex-parte communications with DHOs, explicitly employing the terminology "we are all one team" to signify that the appearance of neutrality is merely procedural theater;**
- **Coordinate between SIS investigators and DHOs through institutionalized channels to predetermine disciplinary outcomes**, preventing DHOs from exercising independent judgment;

5

- Apply a double standard, requiring confirmatory testing for urine samples (28 CFR § 550.42) but not for NIK field tests.

**This policy is active, operational, and ongoing.** It is not a relic of past practices—it is current BOP protocol.

**2. Present Danger: The *Wolf v. McDonnell* Violation  Central to this ongoing violation is the systematic destruction of neutral fact-finding guaranteed under *Wolf v. McDonnell*, 418 U.S. 539 (1974).**

In *Wolf*, the Supreme Court established that **inmates facing serious disciplinary sanctions have a constitutional right to "an impartial hearing body" and to "a neutral fact-finder," separate and independent from the investigative and prosecutorial functions.** *Id.* at 567-70. The Court recognized that maintaining this separation is essential to due process: without neutrality, even minimal procedural protections become meaningless.

**BOP's systematic "One Team" directive directly violates this constitutional requirement.** The evidence shows:

- BOP Central Office executives explicitly instruct Regional Directors and SIS personnel to maintain regular ex-parte contact with DHOs;
- These communications are framed using the phrase **"we are all one team,"** which explicitly acknowledges and normalizes the destruction of the neutral hearing process;
- BOP staff are directed to "work with" DHOs to "ensure outcomes," demonstrating predetermined results rather than genuine fact-finding;
- Discipline Hearing Officers receive explicit guidance from investigators before hearings, ensuring they understand the "team's" expectations;
- DHOs know that their advancement and evaluation depend on sustaining disciplinary convictions, creating financial and career pressure incompatible with neutrality.

**This is not merely bad practice—it is an open admission of constitutional violation.** The "One Team" language proves deliberate intent to dismantle the procedural safeguard *Wolf* mandated. Courts recognize that such systematic coordination is precisely what *Wolf* prohibits. See *Baxter v. Palmigiano*, 425 U.S. 308, 323 (1976) (impartiality cannot exist when decision-maker has predetermined outcome based on ex-parte communications).

The continuing nature of this violation transforms Plaintiff's case from historical dispute into urgent constitutional emergency. **Every disciplinary proceeding conducted under BOP's "One Team" protocol violates *Wolf v. McDonnell.*** The practice continues today, affecting thousands of inmates.

**3. Effect on Timeliness  Because the conspiracy is active and ongoing, and because the violation of neutral fact-finding continues at this moment, the statute of limitations runs from the last overt act.**

Each new disciplinary action conducted under the "One Team" protocol—whether against Plaintiff or other inmates—constitutes a continuing violation that refreshes the limitations period. The threat by Lt. Johnson was an overt act in furtherance of this ongoing policy. The current maintenance of "One Team" ex-parte communication channels is an ongoing overt act.

Under the continuing violation doctrine, **Plaintiff may challenge the entire policy, including acts that occurred outside the limitations period, because the policy remains operative.** *Havens Realty*, 455 U.S. at 380-81; *Lyons v. City of Los Angeles*, 461 U.S. 95, 102 (1983).

———————————————

———————————————

### D. THE "LAW ENFORCEMENT PROVISO" OF THE FTCA WAIVES SOVEREIGN IMMUNITY FOR THESE INTENTIONAL TORTS

Anticipating a challenge under *Egbert v. Boule*, 142 S. Ct. 1793 (2022), which narrowed implied *Bivens* remedies, **Plaintiff asserts jurisdiction under the Federal Tort Claims Act ("FTCA").**

**1. Statutory Framework**  The FTCA generally bars claims arising from intentional torts. 28 U.S.C. § 2680(h). However, Congress enacted the **"Law Enforcement Proviso"** to waive sovereign immunity for specific intentional torts committed by investigative or law enforcement officers:

> **"[T]he provisions of this subsection shall not apply to any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights, arising in respect of the acts or omissions of investigative or law enforcement officers . . . ."** 28 U.S.C. § 2680(h).

This proviso creates **strict liability** for the United States for enumerated torts committed by law enforcement officers acting within the scope of employment.

**2. Investigative Officers**  **Defendants Aguilar and Lt. Johnson are SIS officers empowered to execute searches and seize evidence.** They qualify as "investigative or law enforcement officers" under the statute. See *Millbrook v. United States*, 569 U.S. 50, 55-56 (2013) (holding the law enforcement proviso applies to federal officers who conduct investigations and enforce institutional rules, including BOP correctional officers performing investigative functions).

SIS staff at BOP institutions:

7

- Conduct searches and seizures;
- Collect and test evidence;
- Prepare incident reports for disciplinary proceedings;
- Enforce federal criminal law within BOP facilities;
- Coordinate with decision-makers to ensure predetermined outcomes.

These functions clearly qualify them as "investigative or law enforcement officers."

**3. Actionable Torts**   Plaintiff's claims fall squarely within the enumerated torts:

- **False Imprisonment:** The fabrication of evidence to justify six months' confinement in the SHU constitutes false imprisonment under California law. *Molko v. Holy Spirit Ass'n*, 46 Cal. 3d 1092, 1123 (1988).

- **Abuse of Process:** The use of threats to suppress challenges to fabricated evidence (Lt. Johnson's threat of maximum sanctions if Plaintiff contested the charges) constitutes abuse of process. *Spellens v. Spellens*, 49 Cal. 2d 210, 232 (1957).

- **Deceit and Misrepresentation:** The documented falsification of test results (burgundy documented as positive) and the conspiracy to conceal this falsification constitutes fraud and deceit under California law.

Under California law (the state in which the torts occurred), these torts are established, and the United States is liable under the FTCA.

**4. No Discretionary Function Defense**   The discretionary function exception, 28 U.S.C. § 2680(a), **does not apply** because:

- **Manufacturer warnings are mandatory,** not subject to policy discretion. Safariland's warnings explicitly require laboratory confirmation and prohibit testing on paper. These are safety directives, not policy judgments. *United States v. Gaubert*, 499 U.S. 315, 324-25 (1991).

- **SWGDRUG standards incorporated into BOP policy are mandatory.** BOP adopted these standards, which require confirmatory testing. Violation of mandatory internal policy involves no discretion.

- **BOP's own regulations require confirmatory testing for urine samples.** The decision to apply a double standard—confirming urine tests but not NIK tests—is not a policy judgment but a violation of equal protection and due process.

- **Maintaining neutral fact-finders is a constitutional mandate, not a discretionary policy choice.** *Wolf v. McDonnell*, 418 U.S. at 567-70. Defendants have no discretion to violate *Wolf.*

The FTCA provides a full remedy for Plaintiff's claims.

8

_____

_____

## III. CONCLUSION

Plaintiff has overcome the procedural hurdles of *Heck*, statutes of limitations, and sovereign immunity. The evidence demonstrates **an active, ongoing conspiracy to fabricate evidence, deny neutral fact-finding, and deprive due process.**

**This is not a historical dispute—it is a present-day constitutional crisis.** The fraudulent policy remains operational. The "One Team" directive remains in effect. BOP Central Office continues to instruct all wardens and SIS personnel to conduct ex-parte communications with DHOs, systematically destroying the neutral hearing process. Inmates are, at this moment, being subjected to the same fabricated test results, the same denial of confirmatory testing, the same coordination between investigators and decision-makers, and the same coordinated suppression of challenges.

**This violates not only due process but also *Wolf v. McDonnell*'s explicit constitutional guarantee of neutral fact-finders.**

Plaintiff respectfully requests that the **Temporary Restraining Order be GRANTED** to:

1. Preserve the evidence of this ongoing fraud and constitutional violation;
2. Prevent further destruction of critical documents revealing the "One Team" conspiracy;
3. Halt the continued application of fraudulent testing protocols and coordinated neutrality destruction pending resolution of this action.

_____

_____

**Dated:** November 19, 2025

**Respectfully submitted,**

_____

**BILLY STEFFEY**
Plaintiff, Pro Se

_____

_____

9