ADDENDUM TO SUPPLEMENTAL MEMORANDUM

BILLY STEFFEY
Sacramento, CA

Plaintiff, Pro Se



FILED

CLERK, U.S. DISTRICT COURT

12/11/2025

CENTRAL DISTRICT OF CALIFORNIA

BY _____GSA_____ DEPUTY

DOCUMENT SUBMITTED THROUGH THE
ELECTRONIC DOCUMENT SUBMISSION SYSTEM

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

BILLY STEFFEY,

Plaintiff,

v.

COLETTE S. PETERS, in her official capacity as Director of the Federal
Bureau of Prisons; M. WADE JENNINGS, in his individual and official capacity;
KEVIN SCHWINN, in his individual and official capacity; SAFARILAND, LLC;
R. JOHN LYNN, Regional Special Investigative Agent (DOE 1); SIS
TECHNICIAN S. AGUILAR, (DOE 2); SIS LIEUTENANT [FIRST
NAME UNKNOWN] JOHNSON, (DOE 3); DISCIPLINE HEARING
OFFICER WILLIAM J. CHETWOOD, (DOE 4); DOES 5-50,

Defendants.

Case No.: 2:25-cv-11105-VBF-SK

PLAINTIFF'S ADDENDUM TO SUPPLEMENTAL
MEMORANDUM OF LAW IN SUPPORT OF MOTION
FOR TEMPORARY RESTRAINING ORDER
[Clarifying NIK Test U / Test W Color Interpretation,
Safariland Literature, and Estoppel]

_____

I. INTRODUCTION AND SCOPE OF THIS ADDENDUM

Plaintiff Billy Steffey respectfully submits this Addendum to his Supplemental Memorandum of
Law in Support of his Motion for Temporary Restraining Order. This Addendum focuses on one
core issue that goes to the heart of Plaintiff's individual case and the requested emergency relief:

**The true meaning of the colors produced by NIK Test U (and its equivalent NarcoPouch
923), Safariland's deliberately confusing written guidance, the Bureau of Prisons' evolving**

**shell game from A–U–K to A–U–W, and the estoppel consequences of the Government's own prior positions and expert testimony.**

This filing is **about Plaintiff's case and injuries only.** Plaintiff expressly:

1. Asks the Court to apply these arguments now in resolving his TRO and in managing discovery and merits proceedings in this case; and
2. Acknowledges that the same fraudulent practices he describes likely affect thousands of other federal inmates, but **reserves any class-wide or systemic remedial requests for later phases** (amendment, post-discovery motions, or separate actions) once discovery in this case provides a full evidentiary record.

Plaintiff incorporates by reference his Verified Complaint, Emergency Motion for TRO, and prior Supplemental Memorandum (procedural/jurisdictional issues). This Addendum supplies an integrated, clarified presentation of (1) the chemistry, (2) Safariland's and BOP's written guidance, (3) post-2017 case law and internal BOP records (Jennings and Lynn), and (4) the more recent pivot from Test K to Test W, all directed to show:

- **Only blue** in NIK Test U / NarcoPouch 923 is a presumptive positive for methamphetamine/MDMA;
- **Burgundy/red is baseline and negative** for methamphetamine, and is scientifically meaningless as proof of any specific controlled substance;
- Safariland's language ("amines" vs. "secondary amines") and tiny-footnote disclaimer ("Red in Test U alone is not a positive") are drafted to preserve **corporate deniability while guaranteeing confusion** among line officers, DHOs, and courts;
- BOP and Safariland have, for roughly fifteen years, jointly exploited that ambiguity to mislabel **baseline burgundy**as a "positive" in prison settings where inmates cannot secure confirmatory lab testing; and
- After the Jenkins FTCA decision in 2024 forced Safariland's training materials into the open, BOP has quietly pivoted its sequence from **A–U–K** to **A–U–W** for the same target drugs, while continuing to mischaracterize baseline reagent colors as presumptive positives.

II. TIMELINE CLARIFICATION: JENNINGS SIS ADVISORY (2017)
AND LYNN "ONE TEAM" EMAILS (2018)

Plaintiff clarifies the timing of the internal BOP guidance that underpins the fraud on the disciplinary system:

1. **January 18, 2017 – Jennings SIS Advisory.**
   SIS Lieutenant M. Wade Jennings issued an internal SIS Advisory (attached to the Lynn emails as "NIKSISAdvisory (Jan 2017).pdf") directing that suspected Suboxone/Buprenorphine on paper be tested using the sequence **NIK Test A → NIK Test U → NIK Test K**, and that staff document "burgundy" Test U results as confirming "amphetamines." This Advisory is the central written policy that misrepresents burgundy as "positive."

2. **January 23, 2018 – Lynn "Suboxone related Incident Reports" Email.**
**One year and five days later**, Regional SIA R. John Lynn sent a Western Region-wide email to "WXR SIS and Captains," instructing that any Suboxone-related incident report **must** be supported by NIK testing using NIK Test "A" then "U" then "K," with attached photographs and memoranda, and warning that failure to follow this formula would cause "inmates [to] win their appeals" because OGC "will not support your IR without these steps being followed."

Lynn's email further instructs staff to:

- "Please be sure to communicate with your DHO. … Remember we are all on one team … [and] want to make sure we are holding the inmates accountable for their actions."

This corrected timeline (2017 Advisory, then 2018 "One Team" implementation) **reinforces two key points**:

- By January 2018, BOP Central Office and Western Region executives had been operating under Jennings's misinterpretation of Test U for over a year;
- Lynn's 2018 email shows **conscious coordination** between SIS, DHOs, and OGC to lock in the A–U–K protocol and to prevent internal appeals from exposing the fraud.

III. ONLY BLUE IN TEST U / NARCOPOUCH 923 IS A PRESUMPTIVE POSITIVE; BURGUNDY IS BASELINE AND NEGATIVE FOR METHAMPHETAMINE

A. Manufacturer and forensic literature

NIK Test U and NarcoPouch 923 are Simon's reagent / sodium nitroprusside tests designed to detect **secondary amines** such as methamphetamine and MDMA. Safariland and ODV's own NarcoPouch data sheet identifies the 923 test for methamphetamine and MDMA, with the critical color response described as **"deep blue"** after the proper sequence.(CBRNE Tech Index)

Forensic science literature likewise explains that Simon's reagent:

- Produces **dark blue / deep blue** in the presence of certain amphetamine-class drugs;
- Is a **Category C presumptive test** under SWGDRUG; and
- Must be followed by Category A/B confirmatory methods (GC/MS, IR, etc.) before any definitive identification.(JB Publishing Samples)

The NarcoPouch and Sirchie materials are consistent:

- The **target** reaction for methamphetamine/MDMA is **blue**;
- Burgundy, pink, or reddish colors are either baseline, "primary amines," or nonspecific reactions that **do not identify any controlled substance** without confirmatory testing.

B. DEA and federal case law – Michel and Jenkins

In **Michel v. United States Customs & Border Protection / Safariland**, the Southern District of California summarized the NarcoPouch 923 chemistry as follows:

- NarcoPouch 923 is a **presumptive test** that changes color based on the presence of a **secondary amine**;
- Some secondary amines are illegal (e.g., methamphetamine); others (e.g., diphenhydramine) are not;
- NarcoPouch 923 **does not specifically test for methamphetamine**, and a lab must confirm the result before DEA will testify at trial.(Justia Law)

Michel thus locks Safariland and the Government into a baseline concession:

NarcoPouch 923 and NIK Test U are **presumptive tests for secondary amines**, not for methamphetamine itself, and **blue** is the color associated with the methamphetamine/MDMA reaction.

In **Jenkins v. United States (N.D. Ala. No. 1:20-cv-01815, FTCA bench trial, 2024)**, the court quoted the **Identidrug chart** and NIK training materials relied upon by BOP:

- Footnote 2 of the Identidrug chart states that only after **Test A goes from orange to brown and Test U turns [blue]** can the tester "presumptively identify the substance as an amphetamine-type compound," and that "Red in Test U alone does NOT indicate amphetamine-type compounds."
- The training manual then explains the "logic" of Tests A and U:

  "Test A (if it shifts from Orange to Brown) tells us that the substance is either Amphetamine or Methamphetamine. Test U then tells us if we have Amphetamine (primary amine/burgundy) or Methamphetamine (secondary amine/dark blue) present. By not turning dark blue and staying burgundy, this is considered a **negative reaction for the presence of a secondary amine (Methamphetamine)** …"

Jenkins is crucial for Plaintiff's case for two reasons:

1. It confirms that, **even under BOP-endorsed training**, burgundy in Test U is explicitly described as a **negative** for methamphetamine (the very drug BOP claimed to be "confirming" in Plaintiff's disciplinary case).
2. It exposes Safariland's language game: burgundy is labeled "amphetamine (primary amine)" while blue is labeled "methamphetamine (secondary amine)." To a lay DHO or Article III judge, "amphetamines" and "secondary amines" all sound like narcotics; in chemistry, "amines" is simply a broad functional group that includes countless benign substances.

C. DEA chemists and field practice – blue = positive

In Plaintiff's own research and in multiple federal prosecutions involving NarcoPouch 923 and related Simon's reagent tests, DEA chemists and law-enforcement officers consistently describe

the **positive** reaction for methamphetamine as **"blue," "deep blue," or "blue-violet,"** not burgundy. The Michel litigation itself describes CBP officers recording **\*\*"blue reactions indicating presumptive methamphetamine."**(Midpage)

Plaintiff is not asking this Court to resolve disputed chemistry. He is asking the Court to recognize the **Government's own settled position** in its criminal cases and DEA practice:

- NarcoPouch 923 / Test U is **only presumptive**, and
- The **only meaningful presumptive positive** they rely on for methamphetamine/MDMA is **blue**, not burgundy.

IV. SAFARILAND'S CONFUSING LANGUAGE AND TINY FOOTNOTE: "AMINES," "SECONDARY AMINES," AND "RED IN TEST U ALONE"

A. The "amines" vs. "secondary amines" shell game

Safariland's Identidrug chart and training materials deliberately blur core distinctions:

- They label the burgundy outcome as an "amine" / "amphetamine (primary amine)" and the blue outcome as "secondary amine (methamphetamine)."
- To a non-chemist DHO or correctional officer, "amines" sounds like "drugs," and "primary vs. secondary" sounds like degree, not different chemistry.

In reality, the word **"amine"** standing alone is **chemically meaningless as proof of a crime**. There are vast numbers of legal, benign amines (supplements, medications, fermentation byproducts, etc.) that will produce the same color reactions as methamphetamine in a Simon's reagent test. Michel expressly notes that NarcoPouch 923 produces the same response for legal medications such as diphenhydramine.(Justia Law)

B. The microscopic footnote: "Red in Test U alone is not a positive"

The Identidrug chart contains a critical disclaimer in very small font, flagged by an asterisk:

"Red in Test U alone does NOT indicate amphetamine-type compounds."

The Jenkins court quotes this language and then, relying on Safariland's training materials, effectively holds that Test A (orange-to-brown) plus Test U staying burgundy supports a finding of "amphetamine."

From Plaintiff's perspective, that footnote demonstrates why this is not mere confusion but **strategic drafting**:

1. In the BOP context, Test U is **never used "alone."**
   o The entire Jennings/Lynn protocol mandates A–U–K (and now A–U–W) sequences; the chart, training, and SIS bulletins all present Test U as a follow-on, not a stand-alone test.

- o   Thus, the disclaimer about "Test U alone" is practically meaningless for the real-world user and functions mainly as **litigation insurance** for Safariland.
2. The tiny font and asterisk placement ensure that the one sentence that would help a lay user avoid false positives is the **hardest to find and easiest to ignore**.
3. Meanwhile, Safariland privately trains BOP staff that burgundy = "amphetamine" while publicly preserving a footnote that can be wielded in later lawsuits to claim that any misuse was the user's fault.

In short: Safariland has written its materials so that **field officers are almost guaranteed to over-call burgundy as "positive,"** while Safariland preserves a microscopic textual escape hatch for itself and its sophisticated institutional clients.

V. BOP'S SHIFT FROM A–U–K TO A–U–W (POST-2023):
THE NEW "TEST W" SHELL GAME

Historically, and as documented in Plaintiff's exhibits, BOP directed staff to use the sequence **A → U → K** to "identify" Suboxone/Buprenorphine and synthetic cannabinoids (K2/Spice) on paper.

Beginning around 2023, Plaintiff has observed a **coordinated pivot** in more recent § 2241 litigation: BOP now emphasizes an **A → U → W** sequence for the *same* target drugs (K2, Spice, Buprenorphine), despite the fact that:

- Test W was always available and was not newly invented;
- Test W is **not** designed to confirm K2/Spice or Suboxone on paper; and
- Test W is the **only reagent in the sequence that lacks an indefinite shelf life**, with the acid component darkening over 6–12 months to a color that conveniently resembles the "positive" color on the chart.

Yet BOP:

- Maintains **no transparent storage logs** for NIK test stock;
- Has no system-wide protocol to ensure that Test W pouches are "fresh and valid" at the time of use; and
- Continues to treat any darkening in Test W as a "positive" in incident reports and DHO findings, without quantification, calibration, or confirmatory lab testing.

From Plaintiff's vantage point, this looks less like an honest attempt to improve testing and more like a **second-generation shell game**:

- Once Test U's automatic burgundy baseline was exposed (including by Plaintiff's own publicly posted videos and Byers/Reason coverage),(Reason.com) BOP and Safariland pivoted toward Test W as the new "nail in the coffin," while still retaining the misleading A–U sequence to preserve continuity in existing SIS training and DHO culture.

This Court need not resolve every detail of Test W chemistry to see the pattern:

- A–U–K: burgundy Test U was mislabeled as "positive" for nearly a decade;
- A–U–W: as challenges arose, BOP substituted a new third test that is inherently unstable and whose "positive" color is indistinguishable from aged reagent, **again without confirmatory lab testing.**

## VI. SWGDRUG STANDARDS AND BOP'S PRESUMPTIVE-ONLY DUTY

Plaintiff's Verified Complaint already establishes that BOP is bound, by DOJ/DEA standards and SWGDRUG guidance, to treat color tests as **Category C presumptive tests** that require confirmatory Category A or B methods before definitive identification of a controlled substance.

Despite this:

- In Jenkins, the court found that BOP policy at that facility was to rely solely on NIK test kits and not to send substances to an outside lab or obtain urinalysis confirmation.
- Plaintiff's prior 28 U.S.C. § 2241 case (Steffey v. Salazar, D. Or. No. 3:19-cv-00093-JR) reflects the same practice: BOP relied exclusively on Test A/Test U color descriptions (and the mislabeling of burgundy as "positive"), and the habeas court, deferring under the "some evidence" standard, accepted those representations as fact.

Under SWGDRUG, **no color test—whether A/U/K or A/U/W—can, by itself, prove the presence of any specific controlled substance.** When BOP uses these tests as stand-alone proof to strip good time, impose SHU time, or enhance custody levels, it is not merely negligent; it is **acting contrary to the very forensic standards that DOJ endorses.**

## VII. FOIA EVIDENCE OF SECRET SAFARILAND–BOP GUIDANCE

Plaintiff's 2019 FOIA request sought exactly the materials that would expose the internal Safariland/BOP protocols for using Test U against paper Suboxone strips and K2/Spice, including the instructions and bulletins that Jennings and Lynn relied upon.

BOP's Central Office responded that it located **4 pages of responsive records**, but withheld them in full under FOIA Exemption (b)(7)(E) ("law enforcement techniques and procedures").

This confirms:

- Safariland has been issuing **specialized, non-public guidance** to BOP regarding use of NIK tests, including Test U;
- Those materials are considered sensitive "techniques and procedures," not simply generic packaging inserts; and
- BOP and Safariland have intentionally kept the true testing protocol **out of public view and outside the reach of inmates' litigation efforts**, while simultaneously relying on the tests to justify serious sanctions in § 2241 proceedings.

## VIII. ESTOPPEL: LOCKING THE GOVERNMENT AND SAFARILAND INTO THE "BLUE IS POSITIVE" POSITION

A. Judicial estoppel based on prior Government positions

Judicial estoppel exists to prevent a party—including the United States—from playing "fast and loose" with the courts by taking **inconsistent positions** in different proceedings. See New Hampshire v. Maine, 532 U.S. 742 (2001).

Here, Plaintiff's position is straightforward:

1. In **criminal prosecutions** and DEA practice (e.g., Michel and related cases), the Government treats **blue** as the only meaningful NarcoPouch 923 / Test U presumptive positive for methamphetamine and acknowledges the test is presumptive only and non-specific.(Justia Law)
2. In **BOP disciplinary and § 2241 contexts**, including Plaintiff's own 2019 habeas case and the recent Jenkins FTCA case, BOP and AUSAs have repeatedly argued that **burgundy** (paired with Test A orange-to-brown) is a "positive" for "amphetamine-type compounds," without disclosure that:
   o   The test is non-specific and presumptive only;
   o   Burgundy is explicitly described in training as a **negative** for methamphetamine; and
   o   "Amphetamine-type compound" in the Identidrug chart is a marketing label, not a scientifically validated identification.
3. In **this civil case**, Defendants cannot now pivot to say that Safariland always warned that "red in Test U alone is not a positive" and that any misinterpretation belongs solely to individual officers. The internal Jennings/Lynn emails, Plaintiff's FOIA correspondence, and the Jenkins training materials show that Safariland and BOP **jointly engineered** the misinterpretation and then embedded it into DHO culture and § 2241 litigation.

This Court should hold that:

- Defendants are judicially estopped from arguing that burgundy in Test U is a valid "positive" for any specific controlled substance; and
- Defendants are likewise estopped from denying that **only blue** in Test U / NarcoPouch 923 has ever been treated by DEA and their own criminal prosecutors as the presumptive indicator for methamphetamine/MDMA.

B. Equitable estoppel and fairness

Even if formal judicial estoppel were deemed inapplicable at this early stage, equity should prevent Defendants from exploiting the **very ambiguity they created**:

- Safariland chose to use the word "amines" to describe burgundy, without explaining that "amines" includes endless non-controlled substances;
- Safariland buried the only protective language—"Red in Test U alone does not indicate amphetamine-type compounds"—in the smallest font, and then trained BOP staff internally that burgundy confirms "amphetamine";

- BOP then deliberately instructed SIS and DHOs to use A–U–K (and now A–U–W) sequences as **dispositive** in prison discipline, while simultaneously fighting FOIA requests that would reveal the underlying vendor guidance.

Under these circumstances, allowing Defendants now to disclaim responsibility for those misinterpretations would ratify a **fraud on the disciplinary and habeas systems** that has already spanned more than fifteen years.

IX. RELIEF REQUESTED (AS TO THIS ADDENDUM)

This Addendum does **not** seek to convert this case into a class action or to obtain statewide or national relief at this time. Plaintiff asks the Court to:

1. **Incorporate this Addendum into the TRO record** and treat the science, Safariland materials, and estoppel arguments as part of the factual and legal foundation for ruling on Plaintiff's Motion for Temporary Restraining Order.
2. **Hold, for purposes of Plaintiff's case**, that:
   - Only **blue** in NIK Test U / NarcoPouch 923 may be treated as a presumptive positive for methamphetamine/MDMA;
   - Burgundy/red in Test U is a **baseline / negative** reaction for methamphetamine and cannot, without confirmatory testing, constitute "some evidence" of any specific controlled substance; and
   - Safariland's and BOP's contrary internal guidance and practices cannot be used to insulate them from liability in this action.
3. **Apply judicial and/or equitable estoppel** to bar Defendants from:
   - Arguing that burgundy in Test U or Test W is itself a presumptive positive for a particular controlled substance in Plaintiff's case;
   - Relying on the "some evidence" standard to excuse discipline based solely on burgundy Test U or aged Test W results; and
   - Shifting positions between criminal, habeas, and civil contexts regarding what color constitutes a "positive" result in Test U / NarcoPouch 923.
4. **Recognize that only a TRO and targeted discovery** will fully expose:
   - The Safariland–BOP communications and bulletins withheld under FOIA;
   - The extent of the A–U–K to A–U–W pivot across BOP facilities; and
   - The network of "One Team" ex parte communications between SIS and DHOs that has prevented inmates, including Plaintiff, from effectively challenging false "positive" results.

Plaintiff emphasizes again: **this Addendum is about his own case**—the rigged NIK testing used to punish him at FCI Lompoc and FCI Sheridan, the misrepresentations made in his 2019 § 2241 proceedings, and the continuing pattern of concealment that justifies emergency injunctive relief now. The broader implications for other inmates, while obvious, will be addressed through appropriate amendments or separate actions after the record in this case is developed through discovery.

Dated: December 11, 2025
Tokyo, Japan

Respectfully submitted,

_____

BILLY STEFFEY
Plaintiff, Pro Se