BILLY F. STEFFEY

Plaintiff, Pro Se

SACRAMENTO, CA

FILED

CLERK, U.S. DISTRICT COURT

12/16/2025

CENTRAL DISTRICT OF CALIFORNIA

BY_____clee_____DEPUTY

DOCUMENT SUBMITTED THROUGH THE
ELECTRONIC DOCUMENT SUBMISSION SYSTEM

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| BILLY F. STEFFEY, | ) Case No. 2:25-cv-11105-VBF-SK |
| ) | |
| Plaintiff, | ) PLAINTIFF'S OPPOSITION TO |
| | ) DEFENDANT SAFARILAND, LLC'S |
| v. | ) MOTION TO DISMISS |
| PLAINTIFF'S | |
| | ) FIRST AMENDED COMPLAINT |
| COLETTE S. PETERS, et al., | ) PURSUANT TO FED. R. CIV. P. |
| | ) 12(b)(6); REQUEST FOR LEAVE TO |
| Defendants. | ) AMEND |

_____)

MEMORANDUM OF POINTS AND AUTHORITIES

I.  INTRODUCTION

Defendant Safariland, LLC ("Safariland") seeks dismissal by reducing this case to a simple "failure-to-warn" theory and then claiming it wins because the "box instructions" contain warnings and show that only a "dark blue" result is positive.

That framing omits the central allegation and central exhibit: Safariland issued (and the BOP disseminated) a prison-specific directive that redefined what staff would report as the "results" for NIK Test U in the BOP's Suboxone (Buprenorphine HCL) polytesting sequence—explicitly instructing BOP Central Office and staff that "NIK Test U – Methamphetamine Reagent – results are BURGANDY," and that this "update" came from "The SAFARILAND Company."[1]

This is the heart of the case: two sets of instructions.

One set is the consumer-facing insert and warnings, which Safariland now relies upon as an absolute shield.

The other set is the prison-facing "update" and staff-only protocol—distributed through BOP SIS advisories and internal emails—that Safariland knew would be used to "hold inmates accountable," including in a setting where inmates (a) do not have access to the staff-only flowcharts/advisories, (b) do not control the testing, (c) cannot order confirmatory laboratory testing, and (d) lose virtually every § 2241 due process challenge because courts defer under the "some evidence" standard once the government describes the field test as a "positive."[2]

Safariland's Motion is therefore not a serious engagement with the pleaded facts. It is a selective quotation exercise that takes Plaintiff's description of consumer-facing warnings and tries to treat those warnings as dispositive—while ignoring the staff-only directive (the SIS Advisory) that explicitly names Safariland as the source of the "update" and directs staff to record BURGANDY as the results for Test U in the BOP polytesting procedure.[1]

At the pleading stage, this is enough. Plaintiff has identified the "who, what, when, where, and how" of the prison-specific directive and its use. The Motion should be denied. At a minimum, if the Court finds any claim deficient, Plaintiff respectfully requests leave to amend under Rule 15(a) and Ninth Circuit policy favoring amendment.

## II.  PROCEDURAL BACKGROUND (AND WHY THIS SUPPLEMENTAL OPPOSITION IS NECESSARY)

On December 2, 2025, the Court ordered Defendants to respond to Plaintiff's TRO/PI application no later than December 6, 2025 at 11:59 p.m., and ordered Plaintiff's reply due by December 8, 2025 at 11:59 p.m.[3]

Plaintiff complied with the Court's schedule. Safariland did not file a response by the ordered deadline and instead filed its Rule 12(b)(6) Motion on December 15, 2025.[4]

Because Safariland's filing occurred after the Court's TRO/PI response deadline, Plaintiff necessarily filed earlier briefing without the benefit of Safariland's arguments. This Opposition is therefore submitted to address Safariland's actual arguments as filed and to ensure the Court has a complete record on the "two sets of instructions" theory that Safariland's Motion omits.

## III. RELEVANT FACTS (FROM THE FIRST AMENDED COMPLAINT AND ITS EXHIBITS)

A.  The "Burgundy" protocol is not Plaintiff's speculation—BOP disseminated it as an SIS Advisory "update," sourced to Safariland.

The January 18, 2017 BOP SIS Advisory is titled "Update Field Test Kits for Buprenorphine HCL (Suboxone) and Clarify Incident Report Writing." It states: "The SAFARILAND Company has informed Central Office Intelligence Section of an update to the reported color results when testing for Buprenorphine HCL," and further states: "NIK Test U – Methamphetamine Reagent – results are BURGANDY."[1]

The Advisory is explicitly marked "LAW ENFORCEMENT SENSITIVE" and restricted from public release—confirming that this "update" was not consumer-facing packaging, but a staff-only directive.[1]

B.   BOP staff were instructed to use this SIS Advisement and coordinate with DHOs to ensure "legal side" support to "hold inmates accountable."

In an internal email chain, BOP Western Regional staff instructed SIS and captains to use the attached SIS Advisement and NIK chart, attach photographs of the "strips" and tests to incident reports, and coordinate with DHOs and legal ("OGC") to make sure "all supporting documentation and evidence is present," emphasizing: "Remember we are all on one team and at the end of the day, all of us want to make sure we are holding the inmates accountable for their actions."[2]

C.   The harm is real and continuing, including collateral consequences after release.

Plaintiff alleges that the disciplinary "drug" allegation has continuing collateral consequences that extend beyond custody, including lost employment opportunities and ongoing reputational injury. Plaintiff also alleges that the same "drug" allegation has been used against him in family-court proceedings, including within the last several months, and that those proceedings remain ongoing.[5]

IV.  LEGAL STANDARD

A.   Rule 12(b)(6)

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims. The Court must accept the complaint's factual allegations as true and draw reasonable inferences in Plaintiff's favor. A claim survives if it states a plausible entitlement to relief. See Ashcroft v. Iqbal, 556 U.S. 662 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007).

B.  Fraud and Rule 9(b)

Claims sounding in fraud must satisfy Rule 9(b) by alleging the circumstances of fraud with particularity. Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003). The purpose is notice; it does not require Plaintiff to prove the claim at the pleading stage.

C.  Statute of Limitations at the Motion to Dismiss stage

Statute of limitations is an affirmative defense. Dismissal at 12(b)(6) is proper only when the complaint (and matters properly considered) show the claim is time-barred as a matter of law and no plausible tolling/delayed-accrual theory exists. See Jablon v. Dean Witter & Co., 614 F.2d 677, 682 (9th Cir. 1980).

V.  ARGUMENT

A.  Safariland's statute-of-limitations attack is not a basis for dismissal at 12(b)(6).

Safariland argues that because Plaintiff's disciplinary conviction occurred in 2018 and Plaintiff filed this civil action in 2025, all claims are time-barred.[4] But that argument assumes accrual in 2018 and assumes no tolling, no delayed discovery, and no concealment—assumptions that are contradicted by the FAC and exhibits.

This case involves concealed, staff-only directives and FOIA withholding—making accrual fact-intensive. This case is not about whether Plaintiff knew he was disciplined in 2018. He did. The core issue is when Plaintiff could reasonably discover Safariland's direct role in creating and transmitting a prison-specific "update" that redefined reported color results—i.e., the "two sets of instructions" theory.

The SIS Advisory explicitly states Safariland informed Central Office of an "update to the reported color results" and that Test U "results are BURGANDY."[1] The Advisory is marked LAW ENFORCEMENT SENSITIVE and restricted from public release, confirming structural concealment.[1] Plaintiff also pursued FOIA requests for the Safariland/BOP "instructions" and "flow charts," and BOP withheld pages in full under law-enforcement exemptions.[6] Those facts support delayed discovery and/or fraudulent concealment tolling, and at minimum make accrual a factual question not resolvable at a pleading-stage motion.

Plaintiff pleads diligence and concrete barriers (incarceration restrictions + withholding), not mere "I didn't understand." Safariland attempts to weaponize Plaintiff's diligence against him by pointing to Plaintiff's prior efforts (including FOIA). But diligence does not trigger accrual where the key facts remain concealed or withheld. Fox v. Ethicon Endo-Surgery, Inc., 35 Cal. 4th 797, 807 (2005) (discovery rule). Plaintiff alleges he pursued remedies while incarcerated under severe constraints—no internet access, limited law library resources, and no ability to obtain staff-only protocols classified as "law enforcement sensitive."[1][6]

Statutory tolling for incarceration and equitable tolling independently defeat dismissal. California provides statutory tolling for persons imprisoned on a criminal charge, up to two years. Cal. Civ. Proc. Code § 352.1(a). Plaintiff also pursued administrative/habeas processes and FOIA efforts that support equitable tolling under California law. See Addison v. State of California, 21 Cal. 3d 313 (1978). Whether equitable tolling applies is fact-intensive and not suited for dismissal on the pleadings.

Heck-related accrual principles further support denial or, at minimum, leave to amend. Where a civil damages claim would necessarily imply invalidity of a credit-loss disciplinary decision, Heck v. Humphrey and Edwards v. Balisok can operate as a practical bar while habeas is pursued. See Heck v. Humphrey, 512 U.S. 477 (1994); Edwards v. Balisok, 520 U.S. 641 (1997); Nonnette v. Small, 316 F.3d 872 (9th Cir. 2002). At minimum, these principles reinforce that the Court should not decide accrual and tolling as a matter of law on the pleadings—especially where Plaintiff alleges concealed manufacturer directives that infected the "some evidence" adjudication itself.[7]

At minimum, the proper remedy is leave to amend to plead accrual/tolling with additional specificity. Even if the Court finds tolling allegations insufficiently detailed, amendment—not dismissal with prejudice—is the correct remedy at this stage. See Fed. R. Civ. P. 15(a)(2); Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1051–52 (9th Cir. 2003). Plaintiff can plead (and, if necessary, attach) the specific dates of acquisition of particular staff-only documents, FOIA responses and redactions, and the timeline of investigative efforts.

B.  Plaintiff states a plausible strict products liability (failure-to-warn) claim because the alleged defect is conflicting institutional instructions, not consumer instructions.

Safariland argues that Plaintiff's strict products liability claim fails because the NIK packaging contains warnings (including paper-substrate warnings) and because Plaintiff "concedes" the consumer instructions indicate only "dark blue" reflects a positive methamphetamine result.[4] That argument is exactly what the "two sets of instructions" theory defeats.

The FAC alleges a prison-specific directive that contradicts or neutralizes the consumer-facing warning scheme. The SIS Advisory says Safariland provided an "update" to the BOP's "reported color results" and directs that "NIK Test U – Methamphetamine Reagent – results are BURGANDY" in the BOP polytesting procedure for Buprenorphine HCL.[1] This is not a neutral "warning" document. It is a staff-facing protocol instruction that defines what staff are supposed to report and rely on in incident reports—i.e., the very documents used to impose sanctions and defeat appeals.[2]

The defect alleged is therefore not "Plaintiff didn't read the box." The defect alleged is that Safariland created (or at minimum communicated) an institutional reporting protocol for correctional settings that is materially inconsistent with consumer-facing guidance and is foreseeably used to adjudicate liberty interests without confirmatory testing. Safariland cannot claim its warnings are "adequate" while simultaneously "updating" BOP's reported color results in a staff-only channel.

Warnings must be adequate in content and context. A warning directed at an "average purchaser" does not immunize a manufacturer that separately provides an institutional "update" to how results are recorded for prison disciplinary prosecutions. That is especially true where the Advisory is restricted as "LAW ENFORCEMENT SENSITIVE" and inmates do not receive it.[1] At the pleading stage, the Court must accept Plaintiff's allegations that the BOP-facing directive is the controlling instruction set in practice—and that Safariland knew or should have known this institutional use would replace any consumer-facing warning scheme in a prison context.

The "sophisticated intermediary" defense is fact-bound and fails where the manufacturer is the source of the misinformation. Safariland's briefing effectively argues: (a) BOP is a sophisticated user, and (b) any misuse is BOP's fault. But the SIS Advisory undermines both. It states Safariland informed Central Office of the "update" and directs staff what to report as results.[1] The internal BOP emails show staff reliance on the SIS Advisement, and coordination with DHOs and legal to ensure successful disciplinary prosecution ("we are all on one team").[2] At minimum, whether BOP qualifies as a "sophisticated intermediary" on the specific risk at issue (institutional misuse of color reporting and paper substrates in a no-lab-confirmation environment) is a factual question not resolvable on 12(b)(6).

C.   Plaintiff states a plausible fraud claim because he pleads a specific manufacturer-to-agency directive that was relied upon by BOP/DHO/courts to his detriment.

Safariland argues Plaintiff's fraud claims fail because Plaintiff did not directly rely on Safariland's statements and because Safariland did not communicate with Plaintiff.[4] That argument is too narrow for this factual setting and ignores the pleaded reliance chain.

Plaintiff satisfies Rule 9(b) with the SIS Advisory's date, source, content, and mechanism. The FAC and exhibits identify:

• The document (SIS Advisory),

• The date (January 18, 2017),

• The source statement ("The SAFARILAND Company has informed Central Office Intelligence Section of an update to the reported color results"), and

• The specific misrepresentation/critical instruction ("NIK Test U – Methamphetamine Reagent – results are BURGANDY").[1]

This is not a vague allegation. It is a specific directive that operationalized the alleged misrepresentation in prison disciplinary prosecutions.

Reliance is plausibly alleged through third-party reliance and foreseeable harm. Plaintiff alleges that BOP staff and DHOs rely on these staff-only directives to label results "presumptive positive," write incident reports, impose sanctions, and defend the results in court under the "some evidence" standard.[2][7] The misrepresentation alleged is made to the BOP as the decision-maker and adjudicatory actor for inmates; the foreseeable (and intended) consequence is discipline of inmates and reliance by reviewing authorities (including courts) on the agency's representation of "positive" field test results.

California fraud law does not require that the plaintiff purchase the product from the defendant or receive the misrepresentation in consumer marketing. Where a misrepresentation is made to a third party with the intent or reason to expect it will be acted upon in a manner that affects the plaintiff, the reliance chain can support liability. See, e.g., Lazar v. Superior Court, 12 Cal. 4th 631 (1996) (fraud elements); Restatement (Second) of Torts §§ 531–533 (misrepresentation intended to reach and influence others).

Plaintiff's fraud theory is de-risked: the reliance alleged is BOP/DHO/court reliance, not "Plaintiff relied on Safariland." Safariland tries to convert the reliance requirement into a "gotcha": "Plaintiff did not rely on Safariland." That misses the pleaded mechanism. The FAC alleges the operative reliance is by BOP actors and adjudicators who use Safariland's protocol to make disciplinary decisions about Plaintiff—decisions that impose liberty and property consequences and carry collateral consequences after custody.[2][5][7]

D.   Plaintiff states a plausible fraudulent concealment claim because Safariland's staff-only "update" and restricted dissemination plausibly show concealment of material facts.

Safariland argues concealment fails because it had no direct "transaction" with Plaintiff.[4] But Plaintiff alleges more than a consumer transaction. Plaintiff alleges Safariland affirmatively undertook to "update" the BOP's reported color results for disciplinary use, through staff-only channels marked law enforcement sensitive, while simultaneously relying on public packaging warnings as a liability shield.[1] That is a classic partial-disclosure / active-concealment posture that supports a duty to disclose material facts about the reliability and meaning of the "burgundy" result in the correctional setting at issue. Whether Safariland owed such a duty in this institutional context is fact-intensive and should not be decided on 12(b)(6).

E.   Plaintiff states a plausible civil conspiracy claim because the FAC pleads agreement/inference, overt acts, and a common design to "hold inmates accountable" using the protocol.

Safariland argues conspiracy is conclusory.[4] But the FAC does not merely say "conspiracy." It pleads a specific operational scheme: Safariland's "update" to the reported color results, BOP's SIS dissemination and staff training, coordination with DHO/legal to defeat appeals, and the resulting use of "burgundy" reporting to secure disciplinary convictions.[1][2] Civil conspiracy may be pleaded by inference from circumstantial facts showing concerted action. Applied Equip. Corp. v. Litton Saudi Arabia Ltd., 7 Cal. 4th 503, 511 (1994). The "one team" email and the SIS Advisory "update" are overt acts that plausibly support concerted action at the pleading stage.[1][2]

F.   Equitable relief is not barred at the pleading stage, and Plaintiff pleads ongoing collateral consequences.

Safariland seeks dismissal of equitable relief under Sonner and mootness theory.[4] That argument fails for multiple reasons at this stage:

Rule 8 allows pleading remedies in the alternative. Fed. R. Civ. P. 8(d)(2).

Plaintiff may plead legal and equitable relief while the factual record is undeveloped.

Plaintiff alleges ongoing collateral consequences that damages cannot fully remedy (employment loss and ongoing family-court harms).[5]

Sonner involved equitable restitution under the UCL in a posture where the plaintiff sought equitable monetary relief without showing no adequate remedy at law. It does not require dismissal of all equitable remedies at the pleading stage in a case seeking declaratory/injunctive relief tied to ongoing harms and concealed institutional directives.

If the Court determines some form of equitable relief is unavailable against Safariland on standing/redressability grounds, Plaintiff requests dismissal without prejudice and leave to amend to tailor the requested equitable relief to remedies Safariland can provide (e.g., corrective disclosures/notifications to institutional customers; rescission or retraction of the "update"; production of all prison-facing directives and training materials relevant to the "burgundy" protocol).

G.   Punitive damages are adequately pleaded given the fraud-based allegations and conscious disregard.

Safariland seeks dismissal of punitive damages.[4] Punitive damages are available under California law for fraud, oppression, or malice. Cal. Civ. Code § 3294. Where fraud-based claims survive, punitive damages should not be dismissed at the pleading stage— especially where Plaintiff alleges a knowing institutional "update" designed to support disciplinary prosecutions in a no-lab-confirmation environment.[1][2]

H.   LEAVE TO AMEND MUST BE GRANTED IF ANY CLAIM IS FOUND DEFICIENT.

Even if the Court finds any defect in Plaintiff's pleading, the Ninth Circuit's policy is to grant leave to amend unless amendment would be futile. Fed. R. Civ. P. 15(a)(2); Eminence Capital, 316 F.3d at 1051–52. Here, amendment would not be futile. Plaintiff can add:

• additional dates and facts regarding when specific staff-only directives were obtained;

• additional specificity regarding the reliance chain (BOP incident report → DHO → appeals → court); and

• further detail regarding ongoing collateral consequences (employment and family court) and redressability.

## VI. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court DENY Defendant Safariland's Motion to Dismiss. In the alternative, if the Court finds any claim deficient, Plaintiff respectfully requests leave to amend under Rule 15(a)(2).

DATED: December 16, 2025

Respectfully submitted,

BILLY F. STEFFEY

Plaintiff, Pro Se

FOOTNOTES:

[1] See BOP SIS Advisory (Jan. 18, 2017) ("Update Field Test Kits for Buprenorphine HCL (Suboxone) and Clarify Incident Report Writing"), stating: "The SAFARILAND Company has informed Central Office Intelligence Section of an update to the reported color results..." and "NIK Test U – Methamphetamine Reagent – results are BURGANDY," and marked "LAW ENFORCEMENT SENSITIVE."

[2] See internal BOP email chain directing staff to use attached SIS Advisement/NIK chart, attach photos of "strips" and tests, coordinate with DHOs/legal, and stating: "Remember we are all on one team ... [and] we are holding the inmates accountable."

[3] See Order (Dec. 2, 2025) setting deadlines: response to TRO/PI by Dec. 6, 2025 at 11:59 p.m.; reply due Dec. 8, 2025 at 11:59 p.m.

[4] Defendant Safariland's Motion to Dismiss and supporting memorandum seek dismissal of the Third (strict products liability/failure to warn), Fourth (fraudulent misrepresentation), Fifth (fraudulent concealment), and Sixth (civil conspiracy) causes of action, and seek dismissal of punitive damages and equitable relief.

[5] Plaintiff alleges ongoing collateral consequences after release, including employment harms and use of the disciplinary drug allegation in a pending family-court matter within the last several months. (If the Court requires, Plaintiff can plead these facts with greater specificity by amendment and/or submit a declaration consistent with Rule 56 and local rules.)

[6] See Plaintiff's FOIA efforts seeking Safariland/BOP instructions/flow charts and BOP's withholding/redactions under law-enforcement exemptions, reflecting restricted access to staff-only testing protocols and interpretive directives.

[7] See prior habeas record excerpts reflecting the "some evidence" dynamic once BOP characterizes the NIK result as "positive," and the disciplinary record's continued consequences.